TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00852-CV






Shamrock Communications, Inc. d/b/a/ KJFK and Bill Simonson, Appellants




v.




Debby Wilie, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 98-07611, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 Appellee Debby Wilie sued appellants Shamrock Communications, Inc. d/b/a/
KJFK and Bill Simonson (collectively "Shamrock") for defamation and invasion of privacy
growing out of a radio broadcast. The jury found Shamrock and Simonson liable under both
causes of action and awarded actual damages as well as exemplary damages based on a finding of
malice against both defendants. On Shamrock's motion for remittitur, the trial court reduced the
exemplary damages awarded to KJFK. On appeal, Shamrock raises eight points of error
complaining of the trial court's failure to give an instruction on malice, admission of hearsay
evidence, submission of a defective jury question, and overruling of challenges for cause to six
jurors, as well as the sufficiency of the evidence to support the judgment. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 In February 1997, Wilie rented two of the rooms in her Pflugerville home to offset
some of her expenses. One of her new tenants was Steve Frasier, an employee of KJFK, a radio
station in Austin. Frasier was the producer of a radio show called "B.S. on Sports," which
featured Bill Simonson.

 In September 1997, Wilie threw a private birthday party for herself at her home. 
She sent invitations to approximately fifty people and invited Frasier, telling him he could bring
some of his co-workers from the radio station. Wilie testified that on the day of the party, guests
began arriving between 5:00 p.m. and 6:00 p.m., and from that time on she was busy preparing
for the party and serving her guests. She also testified that during the party she only drank two
shots of tequila and one beer.

 Frasier arrived at the party between 10:00 p.m. and midnight accompanied by
several of his co-workers: Brian Billeck, Kyle Hill, Gregory de Tullio, and Edie Castillo. 
Around 2:00 a.m. Wilie went into her backyard to talk with the KJFK employees. Instead of
sitting in a chair, she sat in Hill's lap. She testified that she was not impaired at any time during
the party, that she had nothing further to drink, and that nothing happened. However, Billeck
testified that while Wilie was sitting on Hill's lap, she pulled down her shirt to reveal more
cleavage. He also testified that Wilie appeared to have been drinking, that her speech was slurred,
that she had one shot of tequila while sitting with the KJFK employees, and that she appeared to
be flirting with Hill.

 Greg de Tullio testified that Wilie appeared to have been drinking and that she did
drink some tequila shots with the KJFK employees. He also testified that while he did not see her
expose her breasts, the reactions and statements made by other people at the table suggested that
she had exposed herself to others at the table. Hill also testified that while he did not see her
expose her breasts, the reaction from the people at the table indicated to him that she had done so.

 Three days after the party, Simonson, who did not attend the party, began
broadcasting the alleged events of Wilie's party during his show. Before the broadcast began, 
Frasier called Wilie and told her that he heard she was doing lap dances and table dances at her
party and Simonson was going to discuss it on his show that day. Wilie objected to the broadcast,
told Frasier that Simonson better not do the broadcast, and angrily hung up the phone. When
Frasier called back a second time, Wilie again said that under no circumstances was Simonson to
air anything that occurred during her birthday party.

 Notwithstanding these warnings, Simonson made statements on his radio show to
the effect that Wilie had done lap dances and table dances and had exposed her breasts. Simonson
also made statements that Wilie had kicked Frasier out of her home and that she was a terrible
person. Although she was not identified by name during these particular broadcasts,(1) Simonson
did call her the "Witch of Pflugerville," "Queen D," and "Queen Dee of the Jungle." Simonson
also said that Wilie was cold and heartless for kicking Frasier out on the streets. These broadcasts
continued for the remainder of the week and into the following week.

 Wilie sued Shamrock for defamation and invasion of privacy. At trial, there was
testimony that what was said in the broadcasts was not true. The jury found both the radio station
and Simonson liable for slander but found that only KJFK acted with malice as to that cause of
action. The jury also found both defendants liable for invasion of privacy and that both had acted
with malice in that regard. The jury awarded nothing for loss of reputation and $125,000 for
"mental pain, mental anguish, shame, embarrassment and humiliation." The jury also assessed
exemplary damages against KJFK in the amount of $300,000 (which the trial court later reduced
to $200,000) and against Simonson in the amount of $30,000. Shamrock perfected this appeal.

DISCUSSION

Malice

 By its first point of error, Shamrock complains that there is no evidence, or
alternatively, factually insufficient evidence, to support the jury's finding of malice against 
Simonson. Shamrock argues that Simonson did not intend to injure Wilie by his broadcasts and
that this testimony was uncontroverted. In addition, Shamrock argues that Wilie failed to elicit
testimony as to Simonson's state of mind, thereby producing no extrinsic evidence. Therefore,
according to Shamrock, Wilie did not meet her burden to prove by clear and convincing evidence
that Simonson acted with malice. See Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (West 1997).

 Malice may be established by direct or circumstantial evidence, and a plaintiff need
not prove that the defendant acted with personal spite; it is sufficient simply to prove that the
defendant committed negligent acts in reckless disregard of another's rights and with indifference
as to whether that party would be injured. Missouri Pac. R.R. v. Lemon, 861 S.W.2d 501, 517
(Tex. App.--Houston [14th Dist.] 1993, writ dism'd by agr.). Malice must be proved by clear
and convincing evidence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003. In the context of a
defamation claim, actual malice is a term of art that is separate and distinct from common law
malice. Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989). It does not include ill will, spite, or
evil motive, but rather requires "'sufficient evidence to permit the conclusion that the defendant
in fact entertained serious doubts as to the truth of his publication.'" Id. (quoting St. Amant v.
Thompson, 390 U.S. 727, 731 (1968)). In other words, a defamatory statement is made with
actual malice when it is made with knowledge of its falsity or with reckless disregard as to its
truth. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995); see also Hagler
v. Proctor & Gamble Mfg. Co., 884 S.W.2d 771 (Tex. 1994).

 When we review a "no evidence" or legal sufficiency point, we consider only the
evidence and reasonable inferences that tend to support the jury's finding, and we disregard all
evidence and inferences to the contrary. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992);
Responsive Terminal Sys., Inc. v. Boy Scouts of Am., 774 S.W.2d 666, 668 (Tex. 1989). We
must overrule the point and uphold the finding if we find any evidence to support the finding. 
Southern States Transp., Inc. v. State, 774 S.W.2d 639, 640 (Tex. 1989). Therefore, we are to
inquire only whether any evidence was presented at trial that tends to support findings that Bill
Simonson acted with malice when he invaded Wilie's privacy. When we review an "insufficient
evidence" or factual sufficiency point, we consider, weigh, and examine all of the evidence which
supports or undermines the jury's finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442,
445 (Tex. 1989). We set aside a judgment based on a jury verdict only when the evidence
standing alone is too weak to support the finding or the finding is so against the overwhelming
weight of the evidence that it is manifestly unjust and clearly wrong. Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965).

 In the present case, the record shows that Simonson did not attend the party and had
no personal knowledge of the alleged events; nevertheless, he broadcast them on the air to
approximately 30,000 listeners. Simonson also testified that he could have called Wilie to verify
Frasier's account of the party but chose not to do so. Simonson acknowledged that broadcasting
allegations that a woman exposed her breasts and performed lap dances and table dances could be
humiliating. In addition, the record reflects that in previous broadcasts Wilie was identified by
name as Frasier's landlord. Therefore, it is likely that at least some listeners could identify Wilie
as the woman to whom the later broadcasts referred. While the evidence is circumstantial, there
is more than a scintilla of evidence supporting the jury's finding that Simonson acted with
conscious indifference toward Wilie and was objectively aware of the degree of risk that was
presented by his broadcasts. Moreover, after reviewing all the evidence, we conclude that the
jury's verdict was not clearly wrong or manifestly unjust. It is the jury's duty to weigh the
evidence and the credibility of the witnesses and resolve any conflicts and inconsistencies in the
testimony. The jury may draw inferences from the facts and choose between conflicting interests. 
The jury may believe all, some, or none of the testimony of the witnesses. Knox v. Taylor, 992
S.W.2d 40, 60 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Finding the evidence legally and
factually sufficient, we overrule Shamrock's first point of error.

Exemplary Damages

 In its second point of error, Shamrock complains that the evidence was legally
insufficient, or alternatively factually insufficient, to support the imposition of exemplary damages
against Shamrock. We will apply the same standard of review as set forth in the previous point
of error. In order for a corporation to act with malice, and thus be liable for exemplary damages,
one of the following factors must be proven: (1) the corporation authorized the doing and the
manner of the act; (2) the agent who committed the act was unfit and the corporation was reckless
in employing him; (3) the agent was employed in a managerial capacity and was acting in the
scope of employment; or (4) the employer or a manager of the corporation ratified or approved
the act. Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 391 (Tex. 1997). Relying on Fort
Worth Elevators Co. v. Russell, 70 S.W.2d 397 (Tex. 1934), the court in Hammerly Oaks used
the theory of "vice-principal" to explain the dichotomy between the doctrine of respondeat superior
and the liability of a corporation for its own actions:


A "vice principal" encompasses four classes of corporate agents: (a) Corporate
officers; (b) those who have authority to employ, direct, and discharge servants of
the master; (c) those engaged in the performance of nondelegable or absolute duties
of the master; and (d) those to whom a master has confided the management of the
whole or a department or division of his business.



Hammerly Oaks, 958 S.W.2d at 391 (citing Fort Worth Elevators, 70 S.W.2d at 406).

 Shamrock argues that the control and discipline of Shamrock employees were
reserved to Mark Kiester, who acted as general manager, and Matt Hogley, director of operations,
and that neither of these men participated in, or even knew of, Simonson's broadcasts. Shamrock
contends Kiester and Hogley were the only vice-principals of the corporation who worked at KJFK. 
Simonson was not responsible for running the day-to-day operations of Shamrock, nor could he hire
and fire employees. Furthermore, there was no evidence adduced at trial indicating Simonson was
a corporate officer or director of Shamrock. Shamrock argues that Simonson was simply an on-air
personality whose position was equivalent to that of a disc jockey at a radio station.

 Shamrock also argues that neither Frasier nor Billeck was a vice-principal of the
corporation. Although Frasier's job title was that of "producer," he had no input into what was said
on the air and there was no evidence that he was a corporate officer or director or had authority to
hire and fire employees. Similarly, Billeck was employed as "marketing promotions director" for
the radio station, but did not have the authority to hire and fire employees, nor was he a corporate
officer or director.

 In response, Wilie contends that Simonson and Frasier were employed in a
managerial capacity at KJFK. The "Huge Show," also known as "B.S. on Sports," was named after
Simonson. She asserts that the show had its own staff, producer, host, and advertising rates. 
According to Wilie, it follows that the show was clearly a "division" of KJFK. There was
testimony at trial that Simonson ultimately ran his own show, came up with his own ideas, and
would broadcast them without first presenting them to anyone at KJFK. Simonson testified that
his producer had no input or say as to what Simonson put on the air.

 We agree with Shamrock that there is no evidence that Simonson and Frasier were
employed in a managerial capacity. However, we believe there was enough evidence presented at
trial to authorize a finding that Billeck was a manager or vice-principal of the corporation. Billeck
was the "marketing promotions director" and was in charge of all aspects of marketing, including
TV, print, and billboards, as well as promotions, on-location setups, and on-air contests. The term
"manager," as applied to a representative of a corporation, implies that the management of the
affairs of the company has been committed to him with respect to the enterprise under his charge. 
Purvis v. Prattco, Inc., 595 S.W.2d 103, 105 (Tex. 1980). From the testimony, Billeck was in
charge of marketing for the entire radio station, a significant responsibility. Because he was in
charge of the division of marketing, we believe Billeck meets the last prong of the vice-principal
test set forth in Hammerly Oaks. See Hammerly Oaks, 958 S.W.2d at 391 ("those to whom a
master has confided the management of the whole or a department or division of the business").

 Having determined there is sufficient evidence to find Billeck was employed in a
managerial capacity, we now turn to the question of ratification.(2) The critical factor in determining
whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the
transaction and his actions in light of such knowledge. Land Title Co. of Dallas, Inc. v. F.M.
Stigler, Inc., 609 S.W.2d 754, 756 (Tex. 1980); see also Lang v. Lee, 777 S.W.2d 158, 162 (Tex.
App.--Dallas 1989, no writ). Ratification may occur when the employer or its vice-principal
confirms, adopts, or fails to repudiate the acts of its employee. Prunty v. Arkansas Freightways,
Inc., 16 F.3d 649, 653 (5th Cir. 1994) (citing Hinote v. Oil, Chemical & Atomic Workers Int'l
Union, AFL-CIO, Local 4-23, 777 S.W.2d 134, 141 (Tex. App.--Houston [14th Dist.] 1989, writ
denied)). In K-Mart No. 4195 v. Judge, 515 S.W.2d 148, (Tex. Civ. App.--Beaumont 1974, writ
dism'd w.o.j.), the court held that since the defendant company's manager had not repudiated the
intentional, tortious acts of his employees, the defendant company had, as a matter of law, ratified
the acts. Id. at 153. Where silence is the basis of ratification, knowledge of all material facts must
be possessed by the principal. Southwestern Bell Tel. Co. v. Wilson, 768 S.W.2d 755, 764 (Tex.
App.--Corpus Christi 1988, writ denied).

 Billeck testified that while he was not aware of the content the first day the broadcast
aired, he did hear parts of the broadcast during the remainder of the week. He also testified that
he was aware Wilie was upset about the content of the broadcast. Billeck also testified that he
thought Simonson's broadcasts were funny and "good radio." He did not reprimand or stop
Simonson, nor did he advise him, in light of Wilie's opposition to the content, as to the possible
consequences of the broadcasts. We conclude there is more than a scintilla of evidence that Billeck
was a vice-principal of Shamrock and that he ratified Simonson's acts. In addition, after reviewing
all of the evidence, we hold that the verdict is not so against the great weight and preponderance
of the evidence as to be clearly wrong and manifestly unjust. We overrule Shamrock's second
point of error.


Jury Instruction

 By its third point of error, Shamrock complains that it submitted, and the trial court
refused, an instruction that contained the four Hammerly Oaks factors constituting the predicate for
a finding of malice. Shamrock objected to the failure to include the instruction at the charge
conference and objected that Shamrock should not be held liable for exemplary damages in the
absence of such an instruction.(3) Shamrock argues that while Hammerly Oaks has applied the four-
factor test for malice to corporations without discussing the conceptual framework for malice as
it applied to corporate entities, an instruction is nonetheless required. Shamrock concedes that it
did not submit the instruction in connection with the exemplary damages question; however, it did
object at the charge conference and cited the court to Pattern Jury Charge 110.35. Shamrock
requests that we reverse the trial court's judgment and render judgment in its favor, because to
remand would require a second jury, charged with deciding only exemplary damages, to hear all
the evidence again. See Green Tree Fin. Corp. v. Garcia, 988 S.W.2d 776, 785 (Tex. App.--San
Antonio 1999, no pet.).

 In response, Wilie argues that the instruction on malice requested by Shamrock is
an incorrect statement of law and an improper comment on the evidence because it refers only to 
Simonson, and not Frasier or Hill. She maintains that KJFK has punitive damage liability due to
the actions of all of its employees who defamed Wilie, and therefore, that the requested instruction
was not substantially correct and Shamrock did not preserve its error. Wilie contends that
Shamrock requested the wrong instruction for the malice question; Pattern Jury Charge 110.35 is
reserved for exemplary damages. The Comments to PJC 110.35 state that this question should
be used in cases where the material fact issues concern the assessment of exemplary damages
against a master for the acts of a servant. Wilie also argues that even if Shamrock did preserve
its error, no instruction was required because the predicate requirement for punitive damages was
conclusively established. See Lone Star Ford, Inc. v. McCormick, 838 S.W.2d 734, 740-41 (Tex.
App.--Houston [1st Dist.] 1992, no writ).

 The trial court should generally explain to the jury any legal or technical terms
contained in the instructions and definitions. See Tex. R. Civ. P. 277; Lumbermens Mut. Cas.
Co. v. Garcia, 758 S.W.2d 893, 894 (Tex. App.--Corpus Christi 1988, writ denied). The
decision whether to submit a particular instruction or definition is reviewed for an abuse of
discretion, with the essential question being whether the instruction or definition aids the jury in
answering the questions. State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997);
McReynolds v. First Office Mgmt., 948 S.W.2d 342, 344 (Tex. App.--Dallas 1997, no writ);
Owens-Corning Fiberglas Corp. v. Martin, 942 S.W.2d 712, 721 (Tex. App.--Dallas 1997, no
writ). Accordingly, courts are given wide latitude in determining the sufficiency of explanatory
instructions and definitions. Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 791 (Tex. 1995). 
A court has considerably more discretion in submitting instructions and definitions than it has in
submitting jury questions. Harris v. Harris, 765 S.W.2d 798, 801 (Tex. App.--Houston [14th
Dist.] 1989, writ denied). When a party complains about the court's refusal to submit a requested
instruction or definition, the question on review is whether the request was "reasonably necessary
to enable the jury to render a proper verdict." Plainsman, 898 S.W.2d at 790; Vinson & Elkins
v. Moran, 946 S.W.2d 381, 405 (Tex. App.--Houston [14th Dist.] 1997, writ dism'd by agr.);
see also Tex. R. Civ. P. 277 (describing what types of instructions and definitions are required). 
The harmless-error rule applies when determining whether the improper refusal to submit a
requested instruction requires reversal. St. James Transp. Co. v. Porter, 840 S.W.2d 658, 664
(Tex. App.--Houston [1st Dist.] 1992, writ denied) (citing Gulf Coast State Bank v. Emenhiser,
562 S.W.2d 449, 453-54 (Tex. 1978)).

 We will first address whether Shamrock preserved its complaint. The supreme
court has said that the test to determine whether a party has preserved a complaint about error in
the jury charge is whether the party made the trial court "aware of the complaint, timely and
plainly," and obtained a ruling. State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d
235, 241 (Tex. 1992). Failure to submit a definition or instruction will not be deemed a ground
for reversal of the judgment unless a substantially correct definition or instruction has been
requested in writing and tendered by the party complaining of the judgment. Tex. R. Civ. P. 278.

 To preserve error as to the trial court's failure to submit a requested instruction,
a party must submit the instruction in substantially correct form. It has been held that
"substantially correct" does not mean absolutely correct, nor does it mean that it is merely
sufficient to call the matter to the attention of the trial court; rather, the requested instruction must
be one that in substance and in the main is correct and that is not affirmatively incorrect. Adams
v. Valley Fed. Credit Union, 848 S.W.2d 182, 187 (Tex. App.--Corpus Christi 1992, writ
denied). Any purported error regarding an omitted jury instruction is deemed waived absent a
request and tender, in writing, of the instruction in substantially correct form; an objection to the
charge, standing alone, will suffice only as to a defective instruction. Lopez v. Southern Pac.
Transp. Co., 847 S.W.2d 330, 333 (Tex. App.--El Paso 1993, no writ). If a party wishes to
complain of the trial court's omission of a requested instruction on appeal, the party is obliged to
make a written request to the trial court for a substantially correct instruction, and the party
otherwise waives any error by the trial court in not submitting a requested instruction. Jarrin v.
Sam White Oldsmobile Co., 929 S.W.2d 21, 25 (Tex. App.--Houston [1st Dist.] 1996, writ
denied). If the trial court fails to include a limiting instruction on damages in its charge to the
jury, the complaining party must object to the charge and tender a written instruction in
substantially correct wording on the proper measure of damages. Jim Howe Homes, Inc. v.
Rogers, 818 S.W.2d 901, 903 (Tex. App.--Austin 1991, no writ).

 Shamrock submitted the requested instruction for the two questions dealing with
malice. By its own admission, it did not request the instruction for the exemplary damages
question. Assuming without deciding that Shamrock preserved its error, the submitted instruction
still did not include other employees of KJFK, thereby implying that the jury could only consider
the actions of Bill Simonson. We do not believe this instruction was submitted in substantially
correct form. Accordingly, we cannot say that the trial court abused its discretion in denying the
proffered instruction. We overrule Shamrock's third point of error.


Slander and Invasion of Privacy

 In its fourth point of error, Shamrock argues that the evidence as to both the slander
and invasion of privacy causes of action is legally insufficient to support the jury's verdict. In a
jury trial, challenges to the legal insufficiency of the evidence must be raised before the trial court
and are preserved by: "(1) a motion for instructed verdict, (2) a motion for judgment
notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion
to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial" specifically
raising the complaint. Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991); see also Hart v.
Moore, 952 S.W.2d 90, 94 (Tex. App.--Amarillo 1997, pet. denied); Tex. R. App. P. 33.1(a).

 During the charge conference, Shamrock objected to the submission of both the
slander and the invasion of privacy questions; however, Shamrock failed to preserve error as to
the invasion of privacy cause of action because the objection was to the form of the submission
and not to the legal sufficiency of the evidence.(4) Because the jury verdict could be upheld on
either the slander cause of action or the invasion of privacy cause of action, Shamrock's fourth
point of error is overruled.


Challenges for Cause

 Shamrock complains in its fifth point of error that the trial court erred by overruling
its challenges for cause as to six jurors. Wilie responds that Shamrock did not properly preserve
its error because Shamrock's single challenge for cause to the six jurors did not adequately inform
the trial court of facts that would disqualify each juror. Moreover, Wilie argues that because the
challenges were lumped together, if any of them were unsustainable, then it was proper for the
trial court to overrule the entire objection.

 In order to preserve error and show that the error in overruling a challenge for
cause was harmful, a party must, during the voir dire examination, challenge a panelist for cause,
and the record must reflect that the court overruled the challenge. It is incumbent upon the
objecting party, before exercising its peremptory challenges, to advise the trial court of two things:
(1) that it would exhaust its peremptory challenges; and (2) that after exercising its peremptory
challenges, specific objectionable jurors would remain on the jury list. Absent such notice to the
trial court, the objecting party waives any error committed by the court in its refusal to discharge
those jurors who were challenged for cause. Hallett v. Houston Northwest Med. Ctr., 689 S.W.2d
888, 890 (Tex. 1985); see also Davila v. State, 930 S.W.2d 641, 648 (Tex. App.--El Paso 1996,
pet. ref'd); Molina v. Pigott, 929 S.W.2d 538, 540-41 (Tex. App.--Corpus Christi 1996, writ
denied).

 After challenging the objectionable panelists(5) for cause and receiving a ruling from
the trial court, Shamrock stated the following: "In that case, Your Honor, the defendants have
been compelled to use their six peremptory challenges to strike the six jurors complained of, and
as a result of the six specific objections, jurors will remain on the panel." Counsel for Shamrock
then listed the six objectionable jurors by name and stated, "those named jurors will be stricken
peremptorily by the defendant given the opportunity."

 We will assume without deciding that Shamrock did preserve its error even though
it grouped its challenges for cause into a single objection. The remaining questions, therefore, are
whether the panelists were biased as a matter of law and whether Shamrock has demonstrated
harm.

 Whether bias and prejudice exist is ordinarily a fact question. Swap Shop v.
Fortune, 365 S.W.2d 151, 154 (Tex. 1963). However, if the evidence shows that a prospective
juror has a state of mind in favor of or against a litigant or type of suit so that the juror is unable
to act with impartiality and without prejudice, the juror is disqualified as a matter of law; all
discretion is removed from the trial court, and it must dismiss the venireman. Compton v. Henrie,
364 S.W.2d 179, 182 (Tex. 1963); Sullemon v. U.S. Fid. & Guar. Co., 734 S.W.2d 10, 14 (Tex.
App.--Dallas 1987, no writ); Gum v. Schaefer, 683 S.W.2d 803, 807 (Tex. App.--Corpus Christi
1984, no writ). Where the evidence is not conclusive, the reviewing court must examine the
evidence in a light most favorable to the trial court's ruling. Gum, 683 S.W.2d at 807. Once bias
or prejudice is established, it is a legal disqualification, and reversible error automatically results
if the court overrules a motion to strike. Compton, 364 S.W.2d at 181-82. A trial court's
decision regarding challenges for cause is reviewed for an abuse of discretion. Guerra v. Wal-Mart Stores, Inc., 943 S.W.2d 56, 59 (Tex. App.--San Antonio 1997, writ denied).

 The disqualification of a member of a jury panel is governed by section 62.105(4)
of the Texas Government Code, which provides: "A person is disqualified to serve as a petit juror
in a particular case if he . . . has a bias or prejudice in favor or against a party in the case." Tex.
Gov't Code Ann. § 62.105(4) (West 1998). The Texas Supreme Court has defined "prejudice"
as "prejudgment" and, as such, "embraces bias." Compton, 364 S.W.2d at 182. The court in
Compton further stated that bias as a ground of disqualification requires "an inclination toward one
side of an issue rather than to the other" to such an extent that "the state of mind of the juror leads
to the natural inference that he will not or did not act with impartiality." Id. The court in
Compton held that a member of a jury panel is disqualified from jury service in the case not only
when he has bias or prejudice for or against the litigant personally, but also when he harbors such
against the subject matter of the litigation. Id.; Sullemon, 734 S.W.2d at 14.

 We must first determine whether the six jurors complained of by Shamrock
disqualified themselves as a matter of law. If not, we must then determine whether the trial court
abused its discretion when it ruled that the six panelists were not biased or prejudiced. Shamrock
asked the following question to which it contends each objectionable juror demonstrated bias or
prejudice as a matter of law:


Mr. Beliveau: Is the mere fact that Shamrock Communications is broadcasting
Howard Stern, for instance, affect your view of the case? Would
they be less likely to believe evidence about a defendant who
broadcasts Howard Stern or G. Gordon Liddy, the head of the
Watergate --


Ms. Welch: It makes me think if they play that kind of stuff then they would
be more likely to be slanderous on the radio.


Mr. Beliveau: Would your feelings about Mr. Stern's possible influence on the
radio station affect your ability to be fair toward the radio station?


Ms. Welch: I'm not sure.


Mr. Beliveau: Do you think you would be able to listen to the evidence that's
presented here inside this courtroom fairly and impartially, or
would you be thinking in the back of your head that they play
Stern?


Ms. Welch: I don't know, I can't say. I would like to say I would be
objective.


Mr. Beliveau: Are you positive?


Ms. Welch: A hundred percent, probably not.


Mr. Beliveau: Is there anything we could do to make you a hundred percent
certain one way or the other or is it just that you have to find out.


Ms. Welch: I think I would have to find out.


Mr. Beliveau: Does anyone agree with Ms. Welch?


Ms. Degutis: I agree with her, too. I don't like the opinions that they give on
their shows and I think they sensationalize things and I think that
would be possibly what they might have done in this case as well.


Mr. Beliveau: Would you hold the fact that they run Stern or G. Gordon Liddy
against the radio station?


Ms. Degutis: I don't hold it against the radio station, no.


Mr. Beliveau: Well, would the fact that these shows are run on this radio station
affect your ability to be a fair juror in this case?


Ms. Degutis: I don't know. I question it, yes. I would have a hard time.


Mr. Beliveau: Even if the evidence shows this didn't have anything to do with
the Howard Stern Show or the G. Gordon Liddy show, it would
affect your ability to be fair in this case?


Ms. Degutis: Possibly, yes.



We cannot say that Ms. Welch's and Ms. Degutis's answers to the questions conclusively
established their prejudice to the point that it leads to the natural inference that they would not
have acted with impartiality. See Compton, 364 S.W.2d at 182; Molina, 929 S.W.2d at 543-44. 
Therefore, the trial court was within its discretion in determining that these veniremen were able
to serve on the jury and in denying Shamrock's challenges for cause as to these two individuals. 
See Swap Shop, 365 S.W.2d at 154; Molina, 929 S.W.2d at 544.

 In Molina, the court of appeals held that the challenged juror, Ms. Miller, was
not biased as a matter of law even though her child had suffered the same complications at birth
as the plaintiff's. During the voir dire examination, the plaintiff's attorney asked Ms. Miller
whether it would be difficult for her to render a verdict, to which she answered she did not know. 
She also said that her own personal experience would always be in the back of her mind, and that
she would probably be more fair on another jury. The court of appeals held that Ms. Miller's
answers did not conclusively establish that she was biased or that she had particularly strong
feelings against the subject matter of the litigation, and so disqualification as a matter of law was
not warranted. Therefore, it was within the trial court's discretion to deny the challenge for cause
as to her. See id. at 542-44. Where a trial court is faced with a vacillating juror, elements such
as demeanor and tone of voice are important factors in conveying the precise message intended. 
Therefore, the trial court's decision is afforded great deference. Mooney v. State, 817 S.W.2d
693, 701 (Tex. Crim. App. 1991) (citing Faulder v. State, 745 S.W.2d 327, 340 (Tex. Crim.
App. 1987)).(6)

 If error by the trial court is shown, the error requires reversal only if it (1)
probably caused the rendition of an improper judgment, or (2) probably prevented the appellant
from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1. Even if the trial
court did err in denying Shamrock's challenges for cause as to some of the jurors, Shamrock has
not shown that the trial court's error probably caused the rendition of an improper judgment. 
Because Shamrock lumped all six jurors into one challenge for cause, we cannot tell from the
record if a different outcome would have resulted if Shamrock had been able to strike some of the
objectionable jurors who remained on the panel. The only way we would be able to say there was
harmful error would be if five or more of the challenged jurors were biased as a matter of law. 
This is because Shamrock identified only two objectionable persons who ultimately served on the
jury. Since at least two of the challenged jurors were not biased as a matter of law, we cannot say
that Shamrock would have needed any additional strikes to use on the two objectionable jurors. 
Accordingly, Shamrock has not shown it was harmed. Having concluded that Ms. Welch and Ms.
Degutis were not biased as a matter of law, we need not decide whether the remaining four panelists
were biased as a matter of law. We overrule Shamrock's fifth point of error.


Mental Anguish

 In its sixth point of error, Shamrock complains that the evidence as to mental
anguish was legally insufficient, or in the alternative factually insufficient, to support the jury's
verdict. In its seventh point of error, Shamrock complains that the jury question regarding
damages was defective because it included the term "embarrassment" in the elements for which the
jury could award mental anguish damages. The jury awarded Wilie actual damages in the amount
of $125,000 for "mental pain, mental anguish, shame, embarrassment and humiliation." Wilie
testified that she was embarrassed, humiliated, and found the broadcasts degrading. She testified
that as a state employee she worried about losing her job if her employer found out about the
broadcasts and also worried what impact it would have on her ailing father if he heard them. She
further testified that co-workers asked her when she would start working at "Sugar's," a topless
bar in Austin. Wilie testified, along with corroborating testimony from a co-worker, that she was
devastated by these broadcasts. Wilie also testified that the emotional and physical impact from
the broadcasts disrupted her everyday routine; she was unable to sleep and had to begin taking
blood-pressure medication.

 In Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995), the supreme court
established the evidentiary requirements for recovery of mental anguish damages. To survive a
legal sufficiency challenge, plaintiffs must present "direct evidence of the nature, duration, and
severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily
routine." Id. at 444. Such evidence, whether in the form of claimant's own testimony or that of
third parties, is more likely to provide the fact finder with adequate details to assess a mental
anguish claim. Id. If there is no direct evidence, the court will apply "traditional 'no evidence'
standards to determine whether the record reveals any evidence of 'a high degree of mental pain
and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to
support any award of damages." Id; accord Latham v. Castillo, 972 S.W.2d 66, 69-70 (Tex.
1998). To recover for mental anguish, the plaintiff must prove such painful emotions as grief,
severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. Texas
Farmers Ins. Co. v. Cameron, 24 S.W.3d 386, 394 (Tex. App.--Dallas 2000, pet. filed) (citing
Phar-Mor, Inc. v. Chavira, 853 S.W.2d 710, 712 (Tex. App.--Houston [1st Dist.] 1993, writ
denied)). We conclude that Wilie's embarrassment and public humiliation rise to the level of
compensable mental anguish; accordingly, the evidence is legally sufficient to support the jury's
verdict. We therefore overrule Shamrock's sixth point of error.

 Having concluded that the evidence was legally and factually sufficient to support
the jury's award of mental anguish damages, we next consider whether the trial court properly
submitted to the jury the question regarding mental anguish damages. Shamrock argues that it was
harmful error for the trial court to submit anything more than a question on "mental pain and
anguish" because Wilie had stated several times throughout the trial that she was embarrassed. 
The question asked the jury to award damages, if any, for "mental pain, mental anguish, shame,
embarrassment and humiliation."

 Submission of an improper jury question can be harmless error if the jury's
answers to other questions render the improper question immaterial. Boatland of Houston, Inc.
v. Bailey, 609 S.W.2d 743, 750 (Tex. 1980); Texas & New Orleans R.R. Co. v. McGinnis, 109
S.W.2d 160, 163 (Tex. 1937). A jury question is considered immaterial when its answer can be
found elsewhere in the verdict or when its answer cannot alter the effect of the verdict. Fleet v.
Fleet, 711 S.W.2d 1, 2 (Tex. 1986); C. & R. Transp., Inc. v. Campbell, 406 S.W.2d 191, 194
(Tex. 1966); Powers v. Standard Accident Ins. Co., 191 S.W.2d 7, 9 (Tex. 1945). Submission
of an immaterial issue is not harmful error unless the submission confused or misled the jury. 
Bailey, 609 S.W.2d at 750; H.E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501, 504 (Tex. Civ.
App.--San Antonio 1949, writ ref'd n.r.e.). When determining whether a particular question
could have confused or misled the jury, we "consider its probable effect on the minds of the jury
in the light of the charge as a whole." Texas Employers Ins. Ass'n v. McKay, 210 S.W.2d 147,
149 (Tex. 1948) (citing Russell v. Great Am. Indem. Co., 94 S.W.2d 409, 410 (Tex. 1936)); City
of Brownsville v. Alvarado, 897 S.W.2d 750, 752 (Tex. 1995).

 Assuming without deciding that the jury charge was erroneous, we cannot say that
submission of the challenged question probably resulted in the rendition of an incorrect verdict. 
Wilie produced sufficient evidence at trial of extreme embarrassment and public humiliation, the
standard set forth in Cameron. Cameron, 24 S.W.3d at 394. In Frank B. Hall & Co. v. Buck,
678 S.W.2d 612, 630 (Tex. App.--Houston [14th Dist] 1984, writ ref'd n.r.e.), the jury,
considering the elements of lost earnings, mental anguish, humiliation, embarrassment, and
damage to reputation and character, awarded actual damages for defamation. The court of appeals
made no mention that it was inappropriate to award damages for embarrassment and humiliation
in a defamation context. Id. Moreover, the jury charge question was in the conjunctive; it
included other elements of damages in addition to embarrassment and humiliation. In the present
case, therefore, we are unable to determine that the jury question was harmful. Shamrock's
seventh point of error is overruled.(7)


Hearsay

 By its final point of error, Shamrock complains that the trial court erred in
admitting two statements allegedly made by Frasier because the statements were inadmissible
hearsay. The admission of these statements, Shamrock argues, was harmful and probably resulted
in the rendition of an improper verdict.

 The admission or exclusion of evidence is committed to the trial court's sound
discretion. Alvarado, 897 S.W.2d at 753. A party seeking to reverse a judgment based on the
admission or exclusion of evidence must show that the evidence was erroneously admitted or
excluded and that the error probably caused an improper judgment to be entered. Id.; Tex. R.
App. P. 44.1(a)(1). A successful challenge to evidentiary rulings usually requires the complaining
party to show the judgment turns on the particular evidence excluded or admitted. Alvarado, 897
S.W.2d at 753-54. Even if error was committed in this case, we would examine the entire record
to determine if the judgment was controlled by the evidence that should have been excluded. See
Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).

 The first statement of which Shamrock complains was from the videotape made
by Frasier the night of the party. While filming, Frasier stated that he was about five hours too
late, but if he had been filming earlier, the audience would have seen a bunch of twenty-two-year-old "hot" women dancing. The second statement complained of by Shamrock is an excerpt of a
voice-mail Frasier left for Wilie.

 Assuming without deciding that these statements were hearsay and thus
erroneously admitted, the record does not show that the judgment was controlled by admitting the
statements. Therefore, even if the admission of the statements was error, any such error was
harmless. Shamrock's final point of error is overruled.


CONCLUSION

 Having overruled Shamrock's eight points of error, we affirm the judgment of
the district court.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: December 14, 2000

Do Not Publish


1. In previous broadcasts, Wilie had been identified by her full name and as Frasier's landlord
and/or roommate.
2. Because we find that ratification is the only one of the four enumerated categories for which
there is a valid argument, we will not address the other three. See Hammerly Oaks, 958 S.W.2d
at 391 ((1) the corporation authorized the doing and the manner of the act; (2) the agent was unfit
and the corporation was reckless in employing him; (3) the agent was employed in a managerial
capacity and was acting in the scope of employment; or (4) the employer or a manager of the
corporation ratified or approved the act).
3. Shamrock submitted Pattern Jury Charge 110.35 in connection with the malice question
rather than the exemplary damages question. Shamrock's proposed instruction states:


You are instructed that KJFK can only be found to have acted with malice because
of the acts of Bill Simonson if, but only if,


a. KJFK authorized the doing and the manner of the act by Bill Simonson; or


b. Bill Simonson was unfit and KJFK was reckless in employing him; or


c. Bill Simonson was employed in a managerial capacity and was acting in the
scope of employment; or


d. KJFK or a manager of KJFK ratified or approved the act.
4. The first objection to the invasion of privacy question was to the unitary submission of all
of the allegedly defamatory statements. Shamrock requested that instead the court submit each
statement individually to the jury. The second objection was to the use of the word "personal"
instead of "private" when defining invasion of privacy. Neither objection dealt with the sufficiency
of the evidence.
5. In its challenges for cause, Shamrock stated: "The defendants would complain specifically
that Juror No. 2, David Ragland, No. 6, Ann Gilmore, No. 7, Julie Welch, No. 10, Ms. Beverly
Degutis, No. 18, Mr. Clifford Wendel, and No. 21, Ms. Rozanne Barber have indicated they are
unable to act as fair and impartial jurors in this case and would ask that they be stricken for
cause."
6. In Mooney, a murder case, a challenged panelist volunteered that members of her family had
been murdered during the preceding three years. Initially, the challenged panelist stated that her
experiences would affect her to some degree in weighing the evidence. However, she concluded
by saying that she would base her decision on the evidence, take the oath, and follow it. See
Mooney, 817 S.W.2d at 701. See also Garza v. State, 622 S.W.2d 85, 92 (Tex. Crim. App.
1981) (on reh'g) (holding that juror was not biased as matter of law when upon being asked if she
could consider probation in sale of heroine case, she stated: "I still have a closed mind and I have
an emotional responsibility." She eventually said she "would be reasonable and listen to the facts"
when considering punishment.)
7. Shamrock cites to Stevens v. National Education Centers, Inc., 11 S.W.3d 185 (Tex. 2000),
in which the supreme court found the jury question that asked the jury to award damages for
"mental anxiety, humiliation and embarrassment" to be defective. However, Shamrock's reliance
on Stevens is misplaced; the trial court there used "mental anxiety, humiliation and embarrassment"
to define mental anguish. Id. at 186.


n filming earlier, the audience would have seen a bunch of twenty-two-year-old "hot" women dancing. The second statement complained of by Shamrock is an excerpt of a
voice-mail Frasier left for Wilie.

 Assuming without deciding that these statements were hearsay and thus
erroneously admitted, the record does not show that the judgment was controlled by admitting the
statements. Therefore, even if the admission of the statements was error, any such error was
harmless. Shamrock's final point of error is overruled.


CONCLUSION

 Having overruled Shamrock's eight points of error, we affirm the judgment of
the district court.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: December 14, 2000

Do Not Publish


1. In previous broadcasts, Wilie had been identified by her full name and as Frasier's landlord
and/or roommate.
2. Because we find that ratification is the only one of the four enumerated categories for which
there is a valid argument, we will not address the other three. See Hammerly Oaks, 958 S.W.2d
at 391 ((1) the corporation authorized the doing and the manner of the act; (2) the agent was unfit
and the corporation was reckless in employing him; (3) the agent was employed in a managerial
capacity and was acting in the scope of employment; or (4) the employer or a manager of the
corporation ratified or approved the act).
3. Shamrock submitted Pattern Jury Charge 110.35 in connection with the malice question
rather than the exemplary damages question. Shamrock's proposed instruction states:


You are instructed that KJFK can only be found to have acted with malice because
of the acts of Bill Simonson if, but only if,


a. KJFK authorized the doing and the manner of the act by Bill Simonson; or


b. Bill Simonson was unfit and KJFK was reckless in employing him; or


c. Bill Simonson was employed in a managerial capacity and was acting in the
scope of employment; or


d. KJFK or a manager of KJFK ratified or approved the act.
4. The first objection to the invasion of privacy question was to the unitary submission of all
of the allegedly defamatory statements. Shamrock requested that instead the court submit each
statement individually to the jury. The second objection was to the use of the word "personal"
instead of "private" when defining invasion of privacy. Neither objection dealt with the sufficiency
of the evidence.