**HAMMERLY OAKS, INC., Petitioner,**

v.

**Darrell EDWARDS, Respondent.**

No. 95–1270.

Supreme Court of Texas.

Argued April 23, 1997.

Decided Dec. 11, 1997.

J. Preston Wrotenbery, Robert H. Bateman, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenbery and Halfand, Houston, for petitioner.

Jim L. Peacock, Gerald M. Birnberg, Matt E. Rubin, Houston, for respondent.

OWEN, Justice, delivered the opinion for a unanimous Court.

█ The sole point of controversy in this case is the award of punitive damages. In

Texas, a corporation may be liable for exemplary damages if it committed gross negligence through the actions or inactions of a vice principal. The court of appeals held that there was some evidence that the leasing agent of a corporate owner of an apartment complex was a vice principal and accordingly modified the trial court's judgment which had disregarded the gross negligence and punitive damages findings. *Edwards v. Hammerly Oaks, Inc.*, 908 S.W.2d 270 (Tex. App.—Hous.[1st Dist]1995). We hold that under the facts of this case, the leasing agent was not a vice principal. There are no other findings to sustain the award of punitive damages. The court of appeals erred in modifying the judgment of the trial court, and we therefore modify the judgment of the court of appeals to exclude punitive damages.

## I

The plaintiff in this case, Darrell Edwards, was a resident of an apartment complex owned by Hammerly Oaks, Inc. Edwards was accosted by attackers who pulled him into a vacant apartment that adjoined his. Edwards was brutally assaulted. The assailants were Roman Gonzales, who had been hired by Hammerly Oaks as an independent contractor to clean carpets, and Roman Gonzales's companion Gabriel Gonzales.

The acts or omissions of three employees of Hammerly Oaks are at issue. Those employees were Marilyn Montgomery, the leasing agent for the apartments; Rose Britton, the acting general manager of the apartment complex and Montgomery's superior; and Frank Smotek, a courtesy patrol guard and sometimes wallpaper hanger and maintenance man.

The Hammerly Oaks apartments had approximately 520 units, and Roman Gonzales cleaned carpets in preparation for new tenants as units were vacated. Hammerly Oaks had used the services of Roman Gonzales without incident for a considerable period of time before the attack on Edwards. The assault on Edwards occurred on a Tuesday afternoon. The preceding Friday, a vacant apartment next door to Edwards's apartment was being readied for a new tenant, and Roman Gonzales had cleaned the carpets.

On Friday night, someone stole Gonzales's cleaning equipment. He reported this to Marilyn Montgomery, the leasing agent, on either Saturday or Monday. Gonzales was upset and told Montgomery that he believed Edwards had taken the cleaning equipment, and Gonzales then stated that he "would like to go over and beat it out of him [Edwards]." Montgomery did not warn Edwards nor did she contact the police or anyone else. She testified that she did not believe that Gonzales had any intention of harming Edwards, that "like any one of us here who [has had] your car broken into or your equipment stolen," the statement was "like ... something I could have said, and I am not a violent woman."

On Monday, the day before the attack, Roman Gonzales also told Rose Britton, the acting apartment manager, that he could not finish cleaning apartments that day because his cleaning equipment had been taken. Britton told him that she would have to hire another company and agreed at trial that this meant Roman Gonzales had "lost his job." However, there is no evidence that Gonzales told Britton that Edwards was responsible for taking the equipment, and Gonzales made no threats against Edwards or anyone else in the presence of Rose Britton. There was no mention of Edwards at all to Rose Britton.

The preparations Hammerly Oaks made for new tenants included rekeying the locks, and at the time of the attack, there was no cylinder in the lock on the vacant apartment next to Edwards. Smotek had been seen in the vacant apartment sometime on the afternoon of the attack performing various "make-ready" activities.

As Edwards arrived home from work later that afternoon, the Gonzaleses forced him into the unlocked apartment where they stabbed and severely beat him. During the attack, Frank Smotek entered the vacant apartment and told Edwards that if he had in fact taken the cleaning equipment, he should return it. When Edwards denied any connection with the disappearance of the property, Smotek told the Gonzaleses to leave. They did so, threatening to kill Edwards if he reported the assault. At that point, instead of taking some action to assist Ed-

wards, Smotek began cleaning up the blood on the landing and in the apartment. Smotek did not contact the police nor did he summon emergency medical personnel. Edwards, seriously wounded, made his own way to his apartment and called 911.

Edwards sued Hammerly Oaks, and the jury found negligence and gross negligence. However, the jury refused to find that the Gonzaleses were acting as employees of Hammerly Oaks and also answered "no" to the following question: "If you have found that Frank Smotek willingly participated in the assault of Plaintiff, was Frank Smotek acting in the scope of his employment while engaging in that activity?"[1] Edwards has not challenged these findings. The jury awarded compensatory damages totaling $133,000 and punitive damages in the amount of $375,000. The trial court rendered judgment awarding all the actual damages together with prejudgment interest, but disregarded the findings of gross negligence and punitive damages.

Hammerly Oaks did not appeal the judgment, but Edwards sought to reverse the trial court's failure to award exemplary damages. Edwards urged two theories in the court of appeals. The first was that Hammerly Oaks had a nondelegable duty to keep the vacant apartment locked. The court of appeals concluded that Edwards waived this argument because the gross negligence question submitted to the jury did not include the theory of nondelegable duty. *See* 908 S.W.2d at 274.

However, the court of appeals agreed with Edwards' alternative argument that the trial court should not have disregarded the jury's findings of gross negligence and punitive damages because there was legally sufficient evidence that Marilyn Montgomery was a vice principal and that she was grossly negligent. *See id.* at 275–76. Accordingly, the court of appeals modified the trial court's judgment, awarding the punitive damages found by the jury. *See id.* at 276.

We agree with the trial court that the jury's finding of gross negligence should have been disregarded, and we therefore reverse the judgment of the court of appeals in that regard. Because of our disposition of this case, we do not reach the second point of error brought by Hammerly Oaks in this Court, which is that there is no evidence of gross negligence on the part of Marilyn Montgomery.

## II

One of the principal cases in Texas on the liability of a corporation for exemplary damages is *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934), *overruled on other grounds by Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987) (holding that a plaintiff need not secure a finding on the amount of actual damages to recover exemplary damages under the former workers' compensation statute, TEX.REV.CIV. STAT. ANN. art. 8306, § 5 (Vernon 1967)[2]). In *Fort Worth Elevators*, this Court recounted that there have been three general views in American jurisprudence on whether or when a corporation can be subjected to punitive damages. One view is that there is no liability. *See id.* at 402. A second view, sometimes referred to as the rule of general liability, is that corporations may be required to respond in punitive damages based on the conduct of employees or agents under the doctrine of respondeat superior. *See id.* at 403. Texas has chosen neither of these extremes, but instead has adopted a modified version of what has been called "exceptional liability." *Id.* The opinion in *Fort Worth Elevators* discussed a number of Texas decisions that have set forth when a corporation

---

1. The jury was instructed:
 An "employee" is acting in the scope of his employment if he is acting in the furtherance of the business of his employer.
 An "employee" is not acting within the scope of his employment if he departs from the furtherance of the employer's business for a purpose of his own not connected with his employment and is [sic] not returned to the place of departure or to a place he is required to be in the performance of his duties.

2. Act approved Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 5, 1917 Tex. Gen. Laws 269, 271, *repealed by* Act approved Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7)-(9), 1989 Tex. Gen. Laws 114.

will and will not be liable for exemplary damages, and then summarized:

> The Texas rule, reduced to its simplest terms, and applied to a case of gross neglect, means that the default for which punitive damages may be recovered must be that of the corporation, that the grossly negligent act must be the very act of the corporation itself; or, if the act is that of a mere servant or employee as such, then it must have been previously authorized or subsequently must be approved by the corporation.

*Id.* at 406.

We subsequently embraced section 909 of the *Restatement of Torts* as stating the general rule in Texas. *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950). That section of the *Restatement* provides:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> (a) the principal authorized the doing and the manner of the act, or
>
> (b) the agent was unfit and the principal was reckless in employing him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d) the employer or a manager of the employer ratified or approved the act.

RESTATEMENT OF TORTS § 909 (1939); *see also Purvis v. Prattco, Inc.,* 595 S.W.2d 103, 104 (Tex.1980) (setting forth these same factors and citing section 909 of the *Restatement (Second) of Torts,* which is unchanged from the original *Restatement of Torts* ).

■ Corporations can, of course, "act only through agents of some character." *Fort Worth Elevators,* 70 S.W.2d at 402. This Court has long recognized that the purpose of punitive damages is to protect society by punishing the offender rather than to compensate the injured party. *See id.* at 403. A corollary to that principle of law is that punitive damages are warranted only when the act is that of the corporation rather than the act of its "ordinary servants or agents." *Id.* Thus, a corporation's liability for punitive damages is placed on very different grounds than respondeat superior. *See id.* at 406.

■ *Fort Worth Elevators* also gives us guidance on how to distinguish between the acts of "the corporation itself" and "that of a mere servant or employee." *Id.* In explaining the dichotomy between the doctrine of respondeat superior and the liability of a corporation for its own actions, our Court has used the construct of "vice principal." *Id.* A "vice principal" encompasses four classes of corporate agents:

> (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business.

*Id.*

■ The Court elaborated on the meaning of "corporate officer," saying that the term was not intended to restrict this class of employees only to corporate officers, per se, but that the term "vice principal" includes one who represents the corporation in its corporate capacity. *Id.* at 407 (citing *Chronister Lumber Co. v. Williams,* 116 Tex. 207, 288 S.W. 402 (1926)). The title of the employee is thus not dispositive. Nor is the degree of responsibility determinative unless that responsibility falls within the parameters set out in *Fort Worth Elevators* and other decisions of this Court. *See, e.g., Durand v. Moore,* 879 S.W.2d 196, 203 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding that doorman at a nightclub was not a vice principal even though he had the discretion to decide whom to admit); *Southwestern Bell Tel. Co. v. Reeves,* 578 S.W.2d 795, 800–01 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (holding that "union manager" of a business office was not a vice principal although four supervisors and four service representatives reported to her).

■ *Fort Worth Elevators* also identifies some of the nondelegable duties of a corporation. In the context of the employer/employee relationship, these include the "duty to exercise ordinary care to select careful and

competent fellow servants or coemployees." *Fort Worth Elevators,* 70 S.W.2d at 401. The jury in *Fort Worth Elevators* had found that the corporation knew that one of its employees was reckless and careless in his work and thus the corporation was liable for punitive damages when that employee was grossly negligent in injuring a coworker. *See id.* at 399–400. The selection and retention of the reckless employee was a breach of a nondelegable duty. *See id.* at 401–02.

In this case, Edwards contends that the award of punitive damages should be sustained on either of two bases. The first is that a vice principal of Hammerly Oaks failed to warn Edwards of the threats by Roman Gonzales or to contact the police regarding those threats. The second is that Hammerly Oaks had a nondelegable duty to keep the door of the vacant apartment locked.

We turn first to the question of whether a vice principal failed to respond appropriately to the threats of Roman Gonzales.

### III

The parties agree that Rose Britton, as acting manager of the apartments, was a vice principal of Hammerly Oaks. However, as noted above, there is no evidence that any threats against Edwards were conveyed to her. Nor was there any contention that Frank Smotek knew of any threats prior to the attack. Although the gross negligence issue identified the Gonzaleses as possible vice principals, there was no evidence that would support such a finding, and the jury failed to find that they were even employees. Edwards did not raise a point of error in the court of appeals or contend in this Court that the Gonzaleses were vice principals. The only other individual identified in the gross negligence issue as a potential vice principal was Montgomery.

■ Therefore the central issue is whether Marilyn Montgomery was a vice principal when she failed to do anything about the threats made against Edwards. It is undisputed that Marilyn Montgomery had no authority to hire or to fire employees or to engage general contractors to perform work on behalf of Hammerly Oaks. She did not hire Roman Gonzales, nor did she have the ability to terminate his services, although she did coordinate with him on which apartments needed carpets cleaned and when. Even those limited functions, however, were overseen by Rose Britton.

Nor was Marilyn Montgomery responsible for the management of the apartments or any division of Hammerly Oaks. She did not have the authority to sign leases or to sign checks. Rather, her duties included showing apartments to prospective tenants and preparing paperwork if potential residents were interested in entering into a lease.

■ Edwards relies on the fact that Marilyn Montgomery was alone in the leasing office when Roman Gonzales threatened Edwards as some evidence that Montgomery was in charge at that moment in time. This Court has held that the trier of fact may draw inferences, but only reasonable and logical ones. The evidence on which Edwards relies is " 'meager circumstantial evidence' which could give rise to any number of inferences, none more probable than another." *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995) (quoting *Litton Indus. Prods. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984)). A jury may not infer an ultimate fact from such evidence. *Id.* Under the theory advanced by Edwards, a jury could conclude that a receptionist or secretary was a vice principal simply because at times, such persons were the only employees of the corporation in the office authorized to converse with the public and to relay information to and from the corporation. The fact that Montgomery was alone in the office when her discussion with Roman Gonzales occurred falls far short of a showing that Montgomery had the authority to hire and fire employees or that she presided over the management of a department of Hammerly Oaks. *See Fort Worth Elevators,* 70 S.W.2d at 406. There is no evidence that Marilyn Montgomery was a vice principal.

### IV

The final issue we must address has been raised by Edwards as an alternative basis for affirming the judgment of the court of appeals. Edwards contends that a breach of a

nondelegable duty to keep the vacant apartment secured was established as a matter of law and that even though the jury was not asked to consider "nondelegable duty" in answering the negligence or gross negligence issues, the jury's finding of gross negligence can be supported by a court's determination that a breach was conclusively established. Edwards contends that both Frank Smotek and Rose Britton breached nondelegable duties.

One source of a duty that Edwards now contends is nondelegable is a Houston city ordinance that requires an owner to "[k]eep the doors and windows of a vacant building or vacant portion of a building securely closed to prevent unauthorized entry." HOUSTON, TEX., CODE OF ORDINANCES ch. 10, art. IX, div. 3, § 10–343(b)(4) (1993). However, this ordinance was not mentioned in Edwards's pleadings, and it was not mentioned to the jury. Edwards nevertheless contends that it is undisputed that the door to the vacant apartment was not locked and that we should hold that a nondelegable duty was breached as a matter of law.

The court of appeals held that Edwards waived his point of error in this regard because of the way the gross negligence issue was submitted to the jury. We agree.

 The jury found that the negligence of "Hammerly Oaks, Inc. proximately cause[d] the occurrence in question." Negligence was defined as the failure to use ordinary care. The negligence issue was not confined to any one employee of Hammerly Oaks. However, the instructions given in conjunction with the negligence issue did not mention the Houston ordinance nor did they define or mention "nondelegable duty."

The gross negligence issue was predicated on a finding of negligence and read as follows:

QUESTION 6

Was such negligence of Hammerly Oaks, Inc. "gross negligence?"

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

You are further instructed that in order for Hammerly Oaks, Inc. to be grossly negligent, you must find that Rose Britton, Frank Smotek, Marilyn Montgomery, Roman Gonzales, and/or Gabriel Gonzales were acting in their capacities as vice-principal of Hammerly Oaks, Inc.

A "vice-principal" of a corporation is a person who has the authority to hire, discharge, and direct employees of the corporation or who has the authority to manage the entire corporation or a department or division of its business.

Answer "Yes" or "No."

Thus, the jury was told that it could find Hammerly Oaks grossly negligent only if one of the individuals identified was a "vice principal." Edwards never contended that Frank Smotek was a vice principal within the meaning of the foregoing definitions, and the evidence would not support such a finding. The court of appeals concluded that because Edwards did not object to the definition of "vice principal" and because Edwards did not request a definition or instruction that the term "vice principal" includes a person engaged in the performance of a nondelegable or absolute duty, Edwards waived his contentions regarding a nondelegable duty as to Frank Smotek. 908 S.W.2d at 274. We agree that because of the manner in which this case was submitted, the jury could not have found Hammerly Oaks liable for punitive damages based on the conduct of Frank Smotek.

However, the court of appeals did not address Edwards's claim that Rose Britton breached a nondelegable duty. Edwards argued that Rose Britton had the ultimate responsibility to see that the vacant apartment was secured and to promulgate written policies and procedures to ensure the safety of the premises. Because Rose Britton was a vice principal as defined in the gross negligence charge to the jury, and because it is undisputed that the door was left unlocked, Edwards contends that the finding of gross negligence must stand. This contention fails

for two reasons. To the extent that a non-delegable duty is erected by the Houston city ordinance, an issue we do not decide, Edwards's argument incorrectly assumes that the failure to keep the doors locked is a violation of the Houston city ordinance as a matter of law. The jury was not asked to consider the ordinance, and we cannot say as matter of law that there was negligence per se when the door was left unsecured. Second, if the failure to keep the doors locked was a breach of a nondelegable common law duty to keep the premises safe for invitees such as Edwards—a question we do not resolve in this case—such a claim is a premises defect claim. This case was not tried on a premises liability theory.

 We first consider in more detail the ordinance and the duty it erects. Generally, whether the breach of an ordinance or statute has occurred and whether that breach was without valid excuse is a question of fact for the jury. *See, e.g., El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987) (stating that whether a provider of alcoholic beverages breached a statutory duty and whether that breach proximately caused a plaintiff's injuries are issues of fact for a jury to resolve); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE AND MOTOR VEHICLES PJC 5.2 (1996). We examined an ordinance similar to the one on which Edwards relies in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex. 1985). In *Nixon,* a ten-year-old girl was abducted and taken directly to an apartment in which " '[t]he glass was broken from the windows and the front door was off its hinges.... The apartment unit in question was empty, filthy, dirty and full of debris.' " *Id.* at 547 (quoting affidavit). We did not hold, as Edwards suggests, that there had been a violation of this ordinance as a matter of law or that there was negligence per se as a matter of law. We instead reversed a summary judgment for the possessor of the property, holding that if the trier of fact concluded that the property owner had violated the ordinance without a valid excuse, then negligence per se would be established. *See id.* at 549. We decline to hold that the failure to keep the doors to a vacant apartment locked at all times under all circumstances is negligence per se as a matter of law as Edwards urges us to do.

Edwards further argues that, independent of the Houston ordinance, there is a common law, nondelegable duty to keep the premises safe for invitees. He asserts that it is undisputed that the door of the vacant apartment was not locked and that Rosemary Britton failed to implement policies to ensure that the doors would be locked. These claims are premise defect claims. Even were we to assume that there was a nondelegable duty to keep the premises in a safe condition for invitees such as Edwards by locking the door of the vacant apartment at all times, no issue was submitted under a premise liability theory. A finding of simple negligence will not suffice. *See generally Williams v. Olivo,* 952 S.W.2d 523 (Tex.1997) (holding that in cases founded on premise defects, findings of simple negligence would not establish liability and that the factors set forth in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex. 1983) must be submitted).

In sum, the jury was not properly asked to find that the failure to lock the door of the vacant apartment was negligence amounting to a breach of a nondelegable duty nor to find that there was a premises defect. The jury's answer to the gross negligence issue was predicated on its finding of "negligence," and the jury was asked if "such negligence" was also gross negligence. The jury could not have concluded that the negligence it found also amounted to gross negligence. Thus, its finding of gross negligence was properly disregarded by the trial court.

\* \* \* \* \*

The court of appeals erred in awarding punitive damages. We accordingly modify the judgment of the court of appeals to delete that award and affirm the judgment in all other respects.