**WAL–MART STORES, INC., Appellant,**

v.

**Geneva REDDING, Appellee.**

**No. 14–99–00836–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 28, 2001.

Rehearing Overruled July 26, 2001.

Keven Dean Jewell, Houston, for appellants.

Marion D. Allen, Angleton, for appellees.

Panel consists of Justices ANDERSON, EDELMAN and WITTIG.

## MAJORITY OPINION

ANDERSON, Justice.

This is an appeal of a premises liability suit arising from a slip, but no subsequent fall. The jury awarded Geneva Redding ("Redding") $50,000 in damages against Wal–Mart Stores, Inc. ("Wal–Mart"). The trial court reduced the damages to $24,093. In three points of error, Wal–Mart asserts that the evidence is legally and factually insufficient to support both the jury's finding on liability and damages, and that the jury charge contained an element of damages without evidentiary support. We reverse and remand.

## Background

Geneva Redding visited a Wal–Mart store on a misty day. After walking through the vestibule and entering the store, Redding slipped on a wet mist on the floor. Redding did not fall, but caught her balance and in doing so sustained painful injuries to her back and neck. Before the accident, because of water accumulation, Wal–Mart mopped the entrance area several times. Immediately after Redding slipped, she reported the incident to a store "greeter." The employee stated the area had been mopped several times that day. The employee also stated she had worried about the damp conditions all day, and she feared someone would get hurt. Redding sued Wal–Mart for negligence. A jury awarded her $50,000; however, they also found Redding to be forty percent negligent, thus the trial court reduced Redding's recovery of actual damages to account for her share of liability. The trial court further remitted $5,907 of the award because Wal–Mart had previously paid that amount in past medical expenses on behalf of Redding. Redding ultimately was awarded $24,093.

## I. Actual or Constructive Knowledge

■ In its first point of error, Wal–Mart contends the evidence was legally and/or factually insufficient to support the element of *actual or constructive knowledge* of a dangerous condition on the part of an owner/operator in a premises liability suit. Redding was Wal–Mart's invitee. As such, Wal–Mart owed her a duty to exercise reasonable care to protect her from dangerous conditions in the store known or discoverable to it. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536–37 (Tex.1975). A premises owner's duty toward its invitee, however, does not make the possessor an insurer of the invitee's safety. *Wal–Mart Stores, Inc. v. Gonza-*

*lez,* 968 S.W.2d 934, 936 (Tex.1998). To recover damages in a slip-and-fall case, a plaintiff must prove: (1) *actual or constructive knowledge* of some condition on the premises by the owner/operator; (2) that the condition posed an unreasonable risk of harm; (3) that the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992).

█ In slip-and-fall cases, the courts have required that the actual or constructive knowledge requirement be met in one of three ways. *Keetch,* 845 S.W.2d at 265. The invitee may prove: (1) the owner/operator put the foreign substance on the floor; (2) the owner/operator knew that it was on the floor and negligently failed to remove it; or (3) the substance was on the floor so long that, in the exercise of ordinary care, it should have been discovered and removed. *Id.*

A. *Legal Sufficiency of the Evidence to Support Actual Knowledge*

Wal–Mart first contends there is no evidence to demonstrate actual or constructive knowledge of the dangerous condition on the basis that Redding failed to demonstrate the length of time the floor had been wet. Therefore, Wal–Mart concludes the evidence is legally insufficient to support the judgment in favor of Redding.

█ When both legal and factual sufficiency points are raised, we are required to rule on the "no evidence," or legal insufficiency, point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). If we find some evidence to support the verdict, we will then review the claim of factually insufficient evidence. *Int'l Piping Systems, Ltd. v. M.M. White & Assoc.,* 831 S.W.2d 444, 447 (Tex.App.—

Houston [14th Dist.] 1992, writ denied). In determining whether there is no evidence of probative force to support a jury's finding, all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Merrell Dow Pharm. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983).

█ Generally, a plaintiff establishes constructive knowledge of a dangerous condition with evidence that the foreign substance was on the floor so long that it should have been discovered and removed in the exercise of ordinary care. *Keetch,* 845 S.W.2d at 265. Accordingly, Texas Courts have held the evidence insufficient to establish constructive knowledge when the record contained no evidence of the length of time the foreign substance was on the floor. *Wal–Mart Stores,* 968 S.W.2d at 938 (holding Gonzalez had to demonstrate it was more likely than not that macaroni salad had been there for a long time to establish a basis for charging

Wal–Mart with constructive knowledge of the condition). Wal–Mart relies on these authorities because the record here contains no evidence of the length of time the floor had been wet and slippery before Redding arrived.

■ Wal–Mart's argument, based on the absence of evidence supporting constructive knowledge, arises from the premise that no employee at the store had actual knowledge of the floor's wet and slippery condition. However, there is direct evidence of Wal–Mart's knowledge of the dangerous condition. In the instant case, Redding testified that immediately after she slipped she looked down at the floor and noticed that the floor was covered with a mist of water. Redding immediately told a Wal–Mart employee, who was standing just beyond the area where the incident occurred, that there was standing water on the floor. This Wal–Mart employee, a greeter named Nell, was standing about fifteen feet inside the entrance. Redding stated the employee told her she "had been worried about *it* all day that somebody was going to get hurt because *it* had been like that all day." (emphasis added). The Wal–Mart employee also stated that, before the accident, the floor had been mopped several times.[1]

As set forth above, a no evidence point will be sustained when the evidence offered to prove a vital fact is no more than a mere scintilla. *Merrell Dow*, 953 S.W.2d at 711. However, more than a scintilla exists when the evidence supporting the finding rises to a level that would enable reasonable and fair minded people to differ in their conclusions. *Id.* Here, Nell's statement to Redding that some condition had been a problem all day and she was concerned someone would be injured as a result of the condition is precisely the type of statement a jury is allowed to interpret. It is true, as Wal–Mart suggests, that the exact meaning of Nell's statement is not clear. However, we believe reasonable and fair minded people on a jury could differ on whether Nell was referring to the weather or to the dangerous condition of the mist on Wal–Mart's floor just inside the front door.[2] Indeed, on redirect examination of Redding, she agreed, without any contemporaneous objection, that Nell made the following statement after Redding approached her complaining about the water on the floor: "I've been worried about that all day. We've tried to mop it a few times, but that water has been.... I've been afraid someone was going to get hurt."

The jury's interpretation of Nell's remarks coincides with the interpretation made by Redding at the time the remarks were made. On direct examination, Redding testified she told Nell "the floor was wet, there was water on the floor and she

---

1. Redding's testimony regarding Nell's statement is hearsay. Wal–Mart did not object to this testimony. Evidence Rule 802 provides that inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. TEX.R. EVID. 802.

2. Wal–Mart cites *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex.1997) in an attempt to invoke the equal inference rule. That rule applies in circumstantial evidence cases, not in direct evidence cases like the instant appeal. In *Hammerly Oaks*, the court held the circumstantial evidence presented constituted no evidence that the leasing agent was a vice principal of the corporate owner of an apartment complex. In that case, the meager circumstantial evidence gave rise to numerous inferences, none more probable than another. *Id.* Here, the direct evidence provided by Nell gave rise to only two inferences, each of which was very probable. In fact, during oral submission of this case counsel for Wal–Mart stated Nell's reference to "it" could have referred to the weather or the floor.

might want to mop it up because somebody could really get hurt, because I had just slipped and I was hurting, . . . ." She further testified she believed, based on Nell's statement that she had been concerned about it all day, that an employee of Wal–Mart had knowledge water was on the floor before Redding told anyone about it. Because the evidence rises to a level allowing reasonable people to reach different conclusions as to its meaning, the evidence constitutes more than a scintilla of evidence Wal–Mart had actual knowledge of the dangerous condition of the floor prior to the time Redding arrived. Therefore, Wal–Mart's no evidence challenge to the jury's implied finding that it had prior knowledge of a dangerous condition, and negligently failed to remove it, is overruled.

## B. *Factual Sufficiency of the Evidence to Support Actual Knowledge*

■ In addition, Wal–Mart asserts the evidence was factually insufficient to support the jury's finding on liability. We review the factual sufficiency of the evidence by weighing and considering the evidence both in support of, and contrary to, the challenged findings. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We will set aside the judgment only if the evidence is so factually weak, or the verdict so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact finder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986).

■ In the case before us, the only evidence offered by Wal–Mart was the testimony of the store manager, John Thompson. He stated that because of the misty weather on the day of the incident, the store had placed floor mats and "Caution Wet Floor" cones in the vestibule area and the cones were out all day. However, he did not know if safety cones were out in the area beyond the vestibule where Nell slipped. He also testified the floor in the area where Redding slipped had been mopped at various times during the day. Moreover, he inspected the floor mats after the incident and found that they were not saturated; however, he also found the mats were not placed in the spot where Redding slipped. Her slip occurred just beyond the vestibule where the mats and cones were located.

Thompson's evidence is not contrary to the jury's finding that Wal–Mart had actual notice of the wet floor beyond the vestibule of the store. Thompson testified about the periodic efforts to ameliorate the moisture brought into the store by the customers, and to warn the customers about the dangerous condition of the floor. While this evidence goes to whether or not Wal–Mart exercised reasonable care to reduce or eliminate the risk from the wet floor—the third element of a premises liability cause of action set out in *Keetch*—it is not evidence that no one at Wal–Mart had actual notice that water was being tracked into the store and beyond the mats by customers coming in from the damp conditions outside. Indeed, his testimony suggests Wal–Mart was well aware of the water on the floor beyond the vestibule, and made certain periodic efforts to rectify the condition. However, Thompson's testimony did not contradict Redding's interpretation of Nell's remark that she was aware that water was on the floor prior to Redding's arrival in the store.

After considering all of the evidence bearing on the issue of whether Wal–Mart had actual knowledge of the water on the floor where Redding slipped, we cannot say the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Therefore, we overrule Wal–Mart's challenge to the factual sufficiency of the evidence to support the jury's implied finding Wal–Mart had actual knowledge of the dangerous condition prior to Redding's arrival.

## II. Broad Form Submission

In point of error two Wal–Mart contends it was error for the trial court to submit the damage questions to the jury in broad form. Specifically, Wal–Mart contends the jury was instructed to consider the elements of medical care, physical pain, and physical impairment, but the court submitted only two blanks—one for damages sustained in the past, and the other for damages in reasonable probability Redding would sustain in the future. Wal–Mart asserts no evidence supported the damage element of future medical care, and, therefore, because timely objection was made, the trial court erred in submitting the jury charge in broad-form instead of using separate questions for each damage element.

To include anything in the jury charge, whether by question, instruction or definition, it must be raised by the written pleadings[3] and the evidence. Tex.R. Civ. P. 278. With respect to questions, the supreme court has mandated that whenever feasible, the trial court must submit the case to the jury by broad-form questions, rather than by separate, granulated questions for each element of a cause of action. Tex.R. Civ. P. 277.

The abuse of discretion standard governs claims of error in the jury charge. *Texas Dep't of Human Servs. v. E. B.*, 802 S.W.2d 647, 649 (Tex.1990). Error in the charge is reversible if it probably caused the rendition of an improper judgment, or probably prevented the appellant from properly presenting the case to the court of appeals. Tex.R.App. P. 44.1(a)(1) and (2); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000); *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). In determining whether error is reversible, we must consider the record as a whole, including the parties' pleadings, the evidence presented at trial, and the charge in its entirety. *Island Recreational*, 710 S.W.2d at 555. However, in *Casteel*, the court held the error of submitting a single broad-form liability question incorporating multiple liability theories, some of which were invalid for that case, is *per se* harmful requiring a new trial. 22 S.W.3d at 388.

During oral argument of this case, counsel for Redding conceded that they did not produce evidence of future medical care.[4] The trial court erred, therefore, by submitting the element of future medical expenses to the jury. Tex.R. Civ. P. 278. Wal–Mart contends the error was harmful under the *per se* rule of *Casteel*, and that this Court should reverse and order a new trial on the ground that we cannot determine whether the jury awarded damages

---

3. Redding's live petition at trial included a claim for expenses for future medical care and treatment in a sum not to exceed $10,000.

4. Indeed, counsel could not have argued to the contrary inasmuch as page 15 of Redding's brief states the following: "Mrs. Redding did not prove any damages for future medical care ... No future medical care was proven to be necessary."

for an element that lacked evidentiary support.

### A *Preservation of Charge Error*

### (1) **During Trial**

The dissent believes Wal–Mart failed to preserve error during the charge conference regarding its challenge to the inclusion of the damage element of Redding's future medical care based on the lack of any evidence on that issue. In reaching this conclusion, the dissent failed to advert to the clear rule articulated by the Court in *State Department of Highways v. Payne*, 838 S.W.2d 235 (Tex.1992).

In *Payne*, the court noted that there are no rules more recondite than those pertaining to the preparation of the jury charge. *Id.* at 240. There are myriad uncertainties in preserving complaints of error in the jury charge. *Id.* The procedure has been further complicated by our adoption of broad-form issue submission, a change intended to have the opposite effect. *Id.* The procedure for preparing and objecting to the jury charge has lost its philosophical moorings. *Id.* at 241. Therefore, the court held:

> There should be but one test for determining if a party has preserved error in the charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be ap-

plied … to serve rather than defeat this principle.

*Id.*

■ Applying the first prong of the rule in *Payne* to the objection raised by Wal–Mart during the charge conference to the submission of an element of damages for which there was no evidence, we conclude Wal–Mart made the trial court aware of the complaint, timely and plainly.[5]

The second prong of the test is also met here: Wal–Mart obtained a ruling. Civil Procedure Rule 272 contains the following presumption: "It shall be presumed, unless otherwise noted in the record, that the party making such objections presented the same at the proper time and excepted to the ruling thereon." TEX.R. CIV. P. 272. In *Acord v. General Motors Corp.*, the Supreme Court interpreted the presumptive provision of Rule 272 to mean that if an objection is articulated and the trial court makes no change in the charge, the objection is, of necessity, overruled. 669 S.W.2d 111, 114 (Tex.1984). Here, because the trial court did not make any change to the charge after Wal–Mart complained about the submission of the unsupported element of future medical care, the presumption in Rule 272 satisfies the need for a ruling by the court on the objection. Accordingly, we hold Wal–Mart preserved its charge error at trial.

---

5. Wal–Mart properly preserved its complaint here regarding the improper submission of an element in the charge for which there was no evidence. Specifically, during the charge conference, the following colloquy occurred between counsel for Wal–Mart and the trial court:

**Wal–Mart:** The only remaining objection I have, Your Honor, is with regard to future damages. There has been no evidence or insufficient evidence of any future physical pain, any future physical impairment.

**Trial Court:** Well, there's a little bit. The doctor testified it takes—usually these things resolve in about four years.

❋ ❋ ❋ ❋

**Wal–Mart:** Also, there's been no evidence of future medical care.

**Trial Court:** Okay. Well, future medical— well, the jury can take that into consideration then. Okay, so we got our charge.

### (2) On Appeal

 The dissent also believes Wal–Mart has waived its error on appeal. At trial, and on appeal, Wal–Mart simply contends it was error for the trial court to submit an element of damages not supported by any evidence. There is no disparity between the complaint at trial and the complaint on appeal.

The dissent also believes that Wal–Mart has waived its error on appeal because it violated Appellate Rule 38.1(h) which requires the brief to contain a concise argument for the contentions made with appropriate citations to authorities and the record. TEX.R.APP. P. 38.1(h). Wal–Mart discusses *Casteel* in its brief and urges this court to apply the reasoning used there to the facts of the case at bar. We cannot accept the suggestion such arguments and supporting authority fail to satisfy Rule 38.1(h). Accordingly, we find no waiver of Wal–Mart's arguments on appeal pertaining to the impropriety of submitting a damage element lacking evidentiary support.

### B. *Presumed Prejudice Doctrine Where Improper Liability Theories Submitted*

 Before addressing Wal–Mart's second point of error, we will examine the rationale for the supreme court's decision in *Casteel* in order to determine its applicability here. In *Casteel* the supreme court addressed the situation where, in the face of a timely and specific objection, a trial court submitted a single broad-form liability question incorporating multiple theories of liability, some valid and some not. 22 S.W.3d at 388. When a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories of liability, the appellate court is often unable to determine the effect of this error. *Id.* The best the court can do is determine that some evidence could have supported the jury's conclusion on a legally valid theory. *Id.* This error cannot be harmless inasmuch as it would allow a defendant to be held liable without judicial determination that a fact finder actually found that the defendant *should* be held liable on proper, legal grounds. *Id.* Accordingly, the *Casteel* court held that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, one or more of which are invalid, the error is *per se* harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory. *Id.*

 Importantly for our analysis of the case at bar, the *Casteel* court noted its disapproval of those courts of appeals' decisions holding that this error is harmless if any evidence supports a properly submitted liability theory. *Id.* at 389. Thus, where improper and proper theories of liability are submitted to the jury, and appellant's objection is timely and specific, the rule in Texas is the appellate court must not affirm merely because the appellant cannot show, under Rule 44.1(a)(1), the error probably caused an improper judgment. *Id.* Rather the error in the charge is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding. *Id.* Reversal for a new trial is the appropriate remedy under Rule 44.1(a)(2) in such circumstances inasmuch as the error complained of probably prevented the appellant from properly presenting the case to the court of appeals. TEX.R.APP. P. 44 .1(a)(2). A mere possibility that the jury got it right despite the error is no longer a viable appellate analytical standard applicable to charge error involving improper theories of liability.

As support for its decision, the *Casteel* court turned to *Lancaster v. Fitch*, 112 Tex. 293, 246 S.W. 1015 (1923), where the court addressed the presumed error doctrine exception to the harmless error analysis. In *Lancaster*, the trial court submitted a single negligence issue with instructions regarding three distinct theories of liability. *Id.* at 1016. The jury returned a verdict for the plaintiff. On appeal, the defendant established that the trial court should not have submitted one of the theories. The court of appeals nevertheless concluded that the error was harmless because the jury could have based its verdict on either of the properly submitted theories. However, the Supreme Court disagreed, holding:

> The jury may have found for [plaintiff] on each of the two issues properly submitted. On the other hand, as authorized by the pleading and the charge of the court, they may have found for [plaintiff] only on the issue that was improperly submitted.... Under the court's charge and under their oaths as jurors they were required to be governed by the charge. In order to hold the error harmless in the submission of the erroneous charge, we must hold that the jury disregarded the charge of the court. This we cannot do, but must presume that the jury in reaching its verdict gave full credit to this instruction and was governed by it.

*Id.* at 1016.

The erroneous charge may have affected the verdict in *Lancaster*, but the structure of the charge created an ambiguity that prevented the appellate court from knowing whether the error actually affected the verdict. Because of this ambiguity, had the burden been placed on the appellant to demonstrate that the error probably affected the verdict—the standard in Rule 44.1(a)—the appellant would have necessarily lost. The *Casteel* court reaffirmed the reasoning in *Lancaster* that, when a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding. *Casteel*, 22 S.W.3d at 389.

We turn now to the question of whether the presumed prejudice doctrine utilized in *Casteel* should be applied where an improper element of damages was submitted in the jury charge.

## C. Application of the Presumed Prejudice Doctrine Where Improper Damages Elements are Submitted

■ The need for a new trial is equally compelling when the jury has been improperly instructed on an element of damage, but the appellant cannot demonstrate that the error probably affected the outcome because only a broad damage issue had been submitted to the jury and the award might have been based entirely on other, properly submitted elements.

The holding in *Casteel* has been applied to a complaint on appeal that the trial court erred in submitting an element of damages to the jury when no evidence supported that element. *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Manufacturing, Inc.*, 42 S.W.3d 149 (Tex. App.—Amarillo 2000, no pet. h.). Because it was improper to find a defendant liable on improper legal grounds, the *Iron Mountain* court held it was no less improper to allow assessment of damages against a defendant without a judicial determination that a fact finder actually found an amount assessed as damages on proper legal grounds. *Id.* at 155. The Amarillo Court held that in the face of a timely and specific objection, submission of

a single broad-form damage question incorporating multiple measures of damages, some valid and some invalid, is harmful error when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory. *Id.*

■■■■ We agree that the submission of an *element* of damages to the jury for which there is no supporting evidence is harmful error,[6] where, as here, the charge error has been timely and specifically preserved. We cannot determine whether the jury based its answer regarding Redding's future physical pain, physical impairment, and medical care on speculation regarding Redding's costs for future medical care. Therefore, we cannot determine the effect of the error. This Court, and other Texas intermediate appellate courts have reached the same conclusion.

In *Worthey Motor Co., Inc. v. Frazier,* 443 S.W.2d 762 (Tex.Civ.App.—Fort Worth 1969, no writ), the trial court had instructed the jury on multiple elements of damage, including damage to the plaintiff's credit, and then submitted a single broad form damage issue. The jury awarded $3,000.00, consisting of $1,500 actual damages and $1,500 exemplary damages. Appellant complained on appeal that the jury was allowed to consider damage to plaintiff's credit when this element was not raised by the pleadings or the evidence. The *Worthey* court held as follows:

> We fail to find any evidence whatever that plaintiff's credit was impaired, damaged, or probably would be damaged or impaired in the future as a result of the acts of defendant, or any evidence from which it could be legally presumed that plaintiff sustained damages to her credit.
>
> Any amount of damages found by the jury on account of damage to plaintiff's credit had to be based on pure speculation and guesswork.
>
> * * * * * *
>
> The jury was not asked to make a finding of the amount of specific damages on each element, hence there is no possible way to determine how much of the $1,500 was awarded to plaintiff for the "no evidence" element of credit impairment. We therefore cannot reform the judgment or require a remitter.

Id. at 763.

The court in *Worthey* did not hold the error of submitting an improper damage

---

6. Louis S. Muldrow and William D. Underwood in their article entitled *Application of the Harmless Error Standard to Errors in the Charge,* also conclude that applying the harmless error analysis to a jury charge which includes an improper damage element is inappropriate. *See* 48 Baylor L.Rev. 815, 842 (1996). Instead of determining whether evidence supporting the properly submitted elements supported the verdict, and finding the charge error to be harmless, the reviewing court should, as some have done, hold that the possibility of harm was sufficient to justify a new trial. *Id.* Broadly stated, the authors' thesis can be summarized as follows. First, the traditional harmless error analysis applicable to trial error involving the submission of various elements of damage, where an element of damage is improper, required the reviewing court to award a new trial regard-

less of whether the jury could have based the award entirely on elements of damage that were properly submitted, because of the equally realistic possibility that the award was based at least in part on the improperly submitted element. *Id.* at 819. Second, recent decisions have refused to presume harm from an improper liability instruction as long as evidence is sufficient to support the jury's verdict based on properly submitted theories. The authors contend this departure from traditional harmless error analysis threatens to undermine dramatically the ability of parties to enforce their right to trial before a jury that has been accurately instructed. *Id.* This article was cited by the *Casteel* court in connection with its adoption and application of the presumed prejudice doctrine to charge error combining valid and invalid theories of liability.

element in the charge was harmless because the appellant could not demonstrate that the award probably included damages for impaired credit; rather, the court determined the possibility of harm was sufficient to reverse and remand the case so that the plaintiff could properly plead and prove her case. *Id.*

Similarly, this Court has held that where the jury charge does not segregate the elements of damage and require a finding as to each one, and one of the elements has no supporting evidence, the case must be remanded on all damages. *Texas Industries, Inc. v. Vaughan,* 919 S.W.2d 798, 804 (Tex.App.—Houston [14th Dist.] 1996, writ denied). In *Vaughan,* the trial court instructed the jury to consider multiple elements of damage, including past and future lost wages as well as past and future mental anguish. The court then submitted a single damage issue, which the jury answered by awarding $173,000. On appeal, this Court concluded the mental anguish damages were not supported by the pleadings or the evidence, and should not have been submitted to the jury. However, rather than concluding the error was harmless because the effect of the error of including the unsupported mental anguish element could not be determined, this Court presumed harm from the improperly submitted element and remanded for a new trial on all damage elements.

*Weingartens, Inc. v. Price* is another case in which this Court addressed the issue of improperly submitted damage elements in the jury charge. 461 S.W.2d 260, 262 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd, n.r.e.). There, the plaintiff did not plead the elements of loss of earnings in the past and loss of earning capacity in the future. *Id.* Further, these issues were not tried by consent. Because these damage elements were neither pleaded nor proved, this Court reversed the judgment of the trial court and remanded the case for a new trial. *Id.* at 264.

Based on the foregoing authorities, we hold submission of the future medical care damage element to the jury in the case at bar was improper. On appeal, Wal–Mart cannot show submission of that improper element probably caused the rendition of an improper verdict, the test for reversal under Rule 44.1(a)(1). Instead, this error prevented Wal–Mart from properly presenting this case to this court of appeals. Tex.R.App. P. 44.1(a)(2). There was no evidence of the extent of Redding's need for and cost of future medical care, but Wal–Mart cannot show this court that the jury did or did not assign some damages to that element. If any damages were so assigned, it was based on pure speculation. Further, this Court cannot determine whether the jury based its verdict on an improperly submitted damage element. *Cf. Casteel,* 22 S.W.3d at 388. We do not believe the error to be harmless, because as in *Lancaster,* to do so we must hold that the jury disregarded the charge of the court. We sustain Wal–Mart's second point of error. Because the submission of the element of future medical care was harmful error, reversal is warranted. *Id.*[7]

## D. When is Broad–Form Submission Not Feasible?

■ In large measure the result we reach in this case is a function of the

---

**7.** The First Court of Appeals has reached a different result on this issue. In *Harris County v. Smith,* No. 01–99–00729–CV, 2001 WL 328164 (Tex.App.—Houston [1st Dist.] April 5, 2001, no pet. h.), the court concluded the presumed harm, per se reversible error standard of *Casteel* does not apply when a trial court erroneously submits unsupported elements of a broad-form damages question, and that a harmless error analysis is proper.

inability of Wal–Mart and this Court to determine the extent of the harm caused by the inclusion of an improper element of damage in the jury charge. As the supreme court noted in *Casteel*, addressing multiple theories of liability in a single question, when the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best serves the policy of judicial economy underlying Rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined. *Casteel*, 22 S.W.3d at 390.[8] Moreover, Rule 277 is not absolute. *Id.* Under Rule 277, trial courts have discretion to submit multiple elements of damages separately where broad form submission is not feasible. The Texas Pattern Jury Charge notes that "[t]he use of a separate answer line for each element of damage might avoid the need for a new trial if the appellate court finds that one or more, but not all, of the elements lack legal or evidentiary support." 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.2 cmt. (2000). Submitting separate issues for each element of damages should not complicate or prolong jury deliberations, given that the standard jury instruction expressly instructs jurors to consider each element of damages separately. More importantly, when a legitimate question exists regarding whether a particular element of should be submitted, submitting separate damage issues would eliminate the need for much of the current speculation by appellate courts over the effect of errors in the charge.

## III. Damages

In issue three, Wal–Mart asserts the evidence is factually and legally insufficient to support the damage awards and that the awards are excessive. It is unnecessary for us to consider, however, whether the evidence is legally or factually insufficient to support the damage awards, or whether the damage awards are excessive. Because the trial court included an improper element of damage in a broad-form damages question, the case must be remanded on all damages. *Vaughan*, 919 S.W.2d at 803. Therefore, because we are remanding this case for a new trial, we need not address Wal–Mart's third point of error.

## IV. Conclusion

■ Texas Rule of Appellate Procedure 44.1(b) provides that "[t]he court may not order a separate trial solely on unliquidated damages if liability is contested." TEX.R.APP.P. 44.1(b). If a party files a general denial in the trial court, that pleading puts a plaintiff to his or her proof on all issues, including liability; its effect extends to contesting liability in the event of remand on appeal. *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001). Here, Wal–Mart contested liability by filing a general denial and alleging in its amended answer that Redding's injuries were proximately caused by her own negligence. Moreover, Wal–Mart has contested liability on appeal by filing a discrete challenge

---

**8.** The dissent suggests the result reached in this opinion is truly reactionary because, presumably, it will require a return to the granulated special issue practice. The sky is not falling. The thrust of our holding today is that trial courts can avoid a new trial by simply submitting a separate answer line for any damage element which trial counsel contends is not supported by any evidence. If the jury finds a dollar figure for that damage element, and the reviewing court determines that damage finding has no evidentiary support, the appellate remedy is not remand for a new trial, as here, but modification of the trial court's judgment to delete the unsupported finding, and affirmance of the judgment as so modified. TEX.R.APP. P. 43.2(b). This pragmatic approach was suggested by the *Casteel* Court and the Texas Pattern Jury Charge.

to liability in this court. Because Rule 44.1(b) proscribes a separate trial on unliquidated damages when liability is contested, we must remand this entire case for a new trial. *See id.*

Accordingly, the judgment of the trial court is reversed and this case is remanded for a new trial on liability and damages.

WITTIG, J. dissenting.

WITTIG, Justice, dissenting.

Because the majority opinion incorrectly applies the recent supreme court holding in *Casteel,* I respectfully dissent. My brothers unintentionally compound and confound the confusion of court charge practice in Texas. Trials courts are mandated by Rule 277 to use broad form submission to all aspects of the court's charge, wherever feasible. TEX.R. CIV. P. 277. In fact, failure to use broad form damage questions can produce reversible (harmful) error. *Westgate Ltd. v. State,* 843 S.W.2d 448, 458 (Tex.1992); *cf. H.E. Butt Grocery v. Warner,* 845 S.W.2d 258, 260 (Tex. 1992). Rather than take a more studied, judicially restrained approach to the rules of charge practice, the opinion rushes to extend a narrow holding into an exception that swallows the rule. The opinion is erroneous in several particulars.

### Waiver—The Charge Conference

At the charge conference, Wal–Mart did not object to the court's charge on the basis of broad form submission. The trial court is mandated to submit controlling questions of liability and damages in broad

form and has no discretion to do otherwise. *Missouri Pacific R. Co. v. Lemon,* 861 S.W.2d 501 (Tex.App.—Houston [14th Dist] 1993, writ dism'd by agr.). Therefore, it is particularly incumbent upon an objecting party to point out to the trial court that broad form submission is not feasible, and why broad form submission is not feasible. TEX.R. CIV. P. 274; *see also Crundwell v. Becker,* 981 S.W.2d 880, 884 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). In the charge conference, Wal–Mart objected to both the liability and allocation questions on the basis of "no evidence of any *negligence*" even though the second question dealt with percentages. Wal–Mart claims it objected to the broad form damage question with a rambling soliloquy about medical care, deposition testimony, Dr. Lionberger, MRI, and the stipulation to $5,906 medicals paid "doesn't make them reasonable and necessary ." "Second, [still discussing question 3, the damages] with regard to the, I guess, lack of breakdown for the damages on Question No. 3 and a specific amount for both—for physical pain, physical impairment, and medical care, we object that those items are not broken down further." The question was presented right out of the pattern jury charge book, with separate elements, including physical pain, physical impairment and medical care, broken down with two answer blanks for past and future damages in the required broad form.

First, Wal–Mart did not object to the broad form submission.[1] There was no

---

1. The majority opinion ignores Wal–Mart's citation to the record at CR 214 for its basis in challenging the broad form submission. Instead, the majority scours the record to find its own basis to support appellant's impoverished position. While Wal–Mart did object later in the charge conference on the basis of "no evidence" to the future medical expenses, the trial court did not rule on this objection. Even assuming the trial court appreciated the no-evidence objection and implicitly overruled it, appellant did not object to the broad form submission or state why it was nonfeasible. Further, appellant did not, at any juncture, raise factual sufficiency, though each of its appellate issues speak of legal and

indication to the trial judge—who had a jury in the box—that appellant thought broad form submission was not feasible. Indeed, if a common slip and fall case cannot be submitted in broad form, what case can be? Next, Wal–Mart gave no indication to the trial judge how or why the damages should be "broken down further." While it's been some time since I studied probability and statistics, we have three elements in two sets of possibilities. Therefore there are at least 36 differing ways to "break down further" the proper broad form question.[2] The way the objection is phrased could even admit the possibility Wal–Mart wanted physical pain broken down to include mental anguish or physical impairment broken down to include disfigurement. Third, the confusing objection to "both" thereafter continues with a rambling objection and conversation about the stipulated medical damages and how the credit would be applied. In sum, Wal–Mart "was required to point out distinctly the matter to which he objected and the ground of his objection" and therefore waived any error on that ground. *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978) (internal citations omitted); Tex.R. Civ. P. 274; *Casteel*, 22 S.W.3d at 389 (requiring objection to the timely and specific).

## Waiver—On Appeal

First, it is well established that issues raised on appeal "must conform to those made at trial or they are waived." *Knoll v. Neblett*, 966 S.W.2d 622, 639 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *see also* Tex.R.App. P. 33.1(a)(1)(A)(complaint to trial court must be with sufficient specificity to make trial court aware unless apparent from context). It has already been demonstrated that appellant's complaint on appeal, broad form submission, was not made at trial. Nor was there sufficient specificity to make the trial court aware of the grounds asserted on appeal.

In addition, the Texas Supreme Court has taken the position that appellant must argue that the evidence considered as a whole is legally insufficient to support the damage findings, failing which, a no evidence challenge is to be rejected. *Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex.1995). While Wal–Mart on appeal does globally attack the legal and factual sufficiency of the evidence on the future physical pain and physical impairment elements, as well as future medical, it cites only contrary authority[3] for its argument and, once again, has waived any error Tex.R.App. P.

---

factual sufficiency. For at least some semblance of a reasonable objection pointing out distinctly the *grounds* and the *reason, see Smith* at n. 2.

2. Nominating past damages as A, B and C and future damages as D, E. and F, we could have A in one question, B C another, D, another, and E F another. Or perhaps Wal–Mart meant AB should "both" be submitted together, then C, then DE, and then F. Et cetera. While I believe the trial court in this case was presented with some evidence of future medical, *see Strahan v. Davis*, 872 S.W.2d 828, 832 (Tex.App.—Waco 1994, writ denied), appellee's counsel conceded there was no evidence of future medical. Thus both the majority and dissent assume no evi-

dence of future medical. I would note, however, that if there is a serious sufficiency or pleading objection to any part of the charge, or if there is a serious question concerning legal validity of a recovery theory, the better practice would be to segregate that element to obviate these esoteric musings. Counsel's objections, as here, should not be rambling, multifarious generalities complaining of everything. Rather the rule clearly requires the objection to both distinctly point out the objectionable matter and state the grounds of the objection. Tex.R. Civ. P. 274.

3. Appellant cites *Wal–Mart Stores, Inc. v. Ard*, 991 S.W.2d 518 (Tex.App.—Beaumont 1999, pet. denied).

38.1(h). Wal–Mart made no factual sufficiency complaint to the trial court. In any event the record provides amply evidence of future damages, including expert medical opinion.

### Why *Casteel* Does Not Apply

*Casteel* addresses compound, complex, valid and invalid, liability theories. *Casteel* 22 S.W.3d at 387. Not simple, valid damage theories. *See id.* Four invalid DTPA liability theories were commingled amongst thirteen liability claims in a broad form submission. *Id.* The high court cited as precedent, *Lancaster v. Fitch,* 112 Tex. 293, 246 S.W. 1015 (1923). Putting aside the myriad of changes in the law since 1923, at its core *Lancaster,* like *Casteel,* finds harmful error when an **invalid liability theory** was submitted. *Id.* at 1016. Neither case is based upon legal or factual sufficiency of a **valid** theory of recovery. Critical to the *Lancaster* holding was the supreme court's reasoning:

> Under the court's charge and under their oaths as jurors they were required to be governed by the charge. In order to hold the error harmless in the submission of the erroneous charge, we must hold that the jury disregarded the charge of the court. This we cannot do, but must presume that the jury in reaching its verdict gave full credit to this instruction and was governed by it.

*Id.* An altogether different situation is presented when a valid liability or damage instruction is given the jury. The jury is instructed to find, by a preponderance of the evidence, liability or damages. The valid theory of damages, such as future medical, cannot be found by the jury, except in conformity to the legally correct charge. And more importantly, the jury cannot find future medical or any other element, unless there is evidence of the future medical or other element. To hold otherwise, "we must hold the jury disregarded the charge of the court. This we cannot do, but must presume that the jury in reaching its verdict gave full credit to this instruction [find by evidence] and was governed by it." *Id.*

Several courts, including Tyler, Beaumont, and Houston First Court of Appeals recently reached this result, although with some variation in reasoning. *Brookshire Bros., Inc. v. Wagnon,* 979 S.W.2d 343, 352–53, (Tex.App.—Tyler, 1998, no pet.), (holding broad form submission is a nondiscretionary directive to trial court and harmless error where no showing jury actually awarded future medical expense in broad form damage submission); *Harris County v. Smith,* No. 01–99–00729–CV, 2001 WL 328164 (Tex.App.—Houston [1st Dist.] April 5, 2001, no pet. h.)(holding where key or controlling issues of liability could not be basis of jury findings, traditional harm analysis applied to no-evidence damage element);[4] and *Wal–Mart v. Ard,* 991 S.W.2d 518 (Tex.App.—Beaumont 1999, pet. denied)(holding single element of damage in broad form question is not reviewed where appellant failed to challenge all elements; court reviews aggregate evidence (traditional harm analysis)). I note all these cases have some valid theories of liability and damages. Even this court has previously held that under broad form submission, appellant must demonstrate that none of the grounds he relies upon by jury support the verdict. *Lemon,* 861 S.W.2d at 532.

---

4. I note Justice Taft's well reasoned and vitally correct opinion uses the word "erroneous" instead of the supreme court's language "invalid theory." A jury submission may be erroneous but not an invalid theory. He seems to define his logic more in terms of key and controlling issues. Quite obviously I agree an invalid theory would typically be a key or controlling issue.

I join Justice Taft's implicit criticism of *Casteel*.[5] *Casteel* changes the burden of showing harm on appeal from the appellant to the appellee. A test of "might have effected" versus "probably effected" is as different as floating downstream versus swimming upstream. Because *Casteel* must be read in connection with *Thomas, Island Recreational,* 710 S.W.2d at 555, and *E.B.,* 802 S.W.2d at 649, it should be viewed and applied narrowly and consistently with Rules 277 and 274. In sum, I would apply the *Casteel* holding only when an invalid theory of law or damages is given to the jury. Lack of legal or factual sufficiency is not an invalid theory of law but rather a valid theory that is unsupported by the evidence. For example, when, like Casteel, four invalid, non-recoverable, theories are submitted globally, and the jury in following their instructions could answer a key or controlling issue adversely, then, harm under TRAP 44.1(a)(2) would be shown. Ordinarily, however, appellant, not appellee, must demonstrate harm. When a legally recognized theory of liability or damages is presented to the jury, appellant must show none of the grounds relied upon by the jury support a jury answer. *Lemon,* 861 S.W.2d at 532; *Smith,* 2001 WL 328164, at *6. To do otherwise encourages the para-

logical paradox of harmful error in granulating questions instead of submitting the required broad-form. *See Exxon Pipeline v. Zwahr,* 35 S.W.3d 705, 713 (Tex.App.—Houston [1st Dist.] 2000, no pet. h.)(submitting two questions of damages instead of one is harmful error).

I would affirm the judgment of the trial court.

---

5. An old adage states those who do not learn from history, are doomed to repeat it. It dates me to recall the old granulated special issue practice. Most of the bench and bar today grew up past that era. Under the old special issue practice, a simple car wreck case would have 35 to 45 issues typically: (1) Did defendant fail to keep a look out? (2) Was such failure to keep a look out negligence? (3) Was such negligence a proximate cause of the accident? (4) Was plaintiff damaged as a result of the negligence of defendant? Then, in sequence, multiple questions were presented about application of brakes, yielding right of way, speed, swerving to avoid accident, etc., etc., to then be followed by granulated damage questions. Jurors and

parties were made to wait hours, or even days, to arrive at a technically correct charge. I had an entire file cabinet filed with thousands of special issues, one for each shade of difference in the submission. Neither justice nor the jury system were served by this arcane special issue practice. To return to anything like that practice now is truly reactionary. Even the submission of a simple "negligence" or "fail to perform the contract" question subsumes multiple elements. Accordingly, only when an entire theory of recovery is invalid, as was the case in *Casteel,* would broad form not be feasible. Or to paraphrase the words of Justice Taft, only when a key or controlling question is invalid, would broad form not be feasible.