**Opinion issued August 16, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00703-CV

———————————

## IN THE INTEREST OF D.J.W., A CHILD

———————————

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-04338J**

———————————

## DISSENTING OPINION

Because the evidence is legally insufficient to support the trial court's finding that appellant, N.W., engaged in conduct that endangered the physical or emotional well-being of her child, I respectfully dissent. *See* TEX. FAM. CODE. ANN. § 161.001(1)(E) (Vernon Supp. 2012).

## Standard of Review

A parent's right to "the companionship, care, custody, and management" of her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982) (internal citation omitted). The United States Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). Likewise, the Texas Supreme Court has also concluded that "[t]his natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings should be strictly scrutinized. *Id*.

Because termination of parental rights "is complete, final, irrevocable and divests for all time that natural right . . . , the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Id.* (citing *Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92; *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984)). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *In re J.F.C.*, 96

2

S.W.3d 256, 264 (Tex. 2002). Because the standard of proof is "clear and convincing," the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264–66.

Instead of requiring just more than a scintilla of evidence to support a finding, we, in conducting our legal-sufficiency review in parental-rights termination cases, must determine whether the evidence, viewed in the light most favorable to the finding, is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. *See id*. at 266. In viewing the evidence in the light most favorable to the finding, we "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so," and we "should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d at 266).

However, a fact finder may not, from meager circumstantial evidence, reasonably infer an ultimate fact, none more probable than another. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997). This Court has explained that under the law of evidence, the term "inference" means,

> [A] truth or proposition drawn from another which is supposed or
> admitted to be true. A process of reasoning by which a fact or
> proposition sought to be established is deduced as a logical

3

consequence from other facts, or a state of facts, already proved.

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting BLACK'S LAW DICTIONARY 700 (5th ed. 1979)). Thus, to "infer" a fact, one "must be able to deduce that fact as a logical consequence from other proven facts." *Id*. In other words, there must be a logical and rational connection between the facts in evidence and the fact to be inferred. *United States v. Michelena–Orovio*, 702 F.2d 496, 504 (5th Cir. 1983), *aff'd on reh'g*, 719 F.2d 738 (5th Cir. 1983) (en banc).

It is important to be mindful that "'[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). To raise a genuine issue of material fact, "the evidence must transcend mere suspicion." *Id*. Evidence that is "so slight as to make any inference a guess is in legal effect no evidence." *Id*. And, in regard to the sufficiency of evidence in circumstantial-evidence cases, one inference cannot be based upon another inference to reach a conclusion. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003). Conclusions based on such stacking do not constitute evidence. *Id*.

## Endangerment

In proceedings to terminate the parent-child relationship brought under section 161.001, the Department of Family & Protective Services ("DFPS") must establish, by clear and convincing evidence, one or more of the acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Under section 161.001(1)(E), a court may terminate the parent-child relationship only if the court finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). "Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. Although such endangerment requires more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed

at the child or that the child actually suffer injury. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

In its briefing to this Court, appellee, DFPS argues that the evidence is legally sufficient to support termination of N.W.'s parental rights to her child because (1) "it is simply unimaginable that [N.W.] was unaware the child's father or *someone else* in the household was abusing" the child's infant brother, who died as a result of physical abuse and (2) N.W. "tested positive for marijuana on the date of the first adversary hearing and on two occasions after she signed the Family Service Plan in this case" and she admitted to having had smoked marijuana since she was "15 or 16 years old."

The majority concedes that the record evidence establishes that the child's infant brother died as a result of physical-abuse injuries inflicted only "one to three weeks" prior to his death and the father pleaded guilty to the crime. But it then opines that "the trial court reasonably could have concluded that [N.W's] admitted drug use affected her parenting abilities by impairing her ability to perceive and protect [the child] from the physical and emotional impact of such injuries inflicted in the home by the father." The majority also states that "[d]rug use that

6

significantly impairs a parent's ability to care for a child jeopardizes the child's physical and emotional well-being." And the majority thus holds that the evidence is legally sufficient to support the trial court's termination of N.W.'s parental rights under section 161.001(1)(E).

Although evidence pertaining to the use of narcotics may, in certain circumstances, constitute legally-sufficient evidence to support the termination of parental rights, the evidence presented in this case concerning the mother's use of narcotics lacks any detail. For example, as the majority candidly concedes, DFPS failed to present any evidence regarding the frequency of the mother's narcotics use. There is simply no evidence in the record before this Court that N.W. used marijuana during the week that the child's infant brother was physically abused by the father. Nor is there any evidence that N.W. ever used marijuana in the presence of her children or in any way that would have actually endangered them.

Here, the majority simply assumes that because N.W. admitted to having used marijuana, she must have therefore used it the week that the child's infant brother was abused and killed. From this assumption, the majority further assumes that she must have used such an amount of marijuana that it impaired her ability to perceive any danger from the father and protect the child's infant brother. The majority's conclusion does not logically follow from its premises and does not constitute an "inference." *See Marshall Field Stores, Inc.*, 859 S.W.2d at 400.

Again, as noted above, evidence that is "so slight as to make any inference a guess is in legal effect no evidence." *Ford Motor Co.*, 135 S.W.3d at 601. And, again, in regard to the sufficiency of evidence in circumstantial-evidence cases, one inference cannot be based upon another inference to reach a conclusion. *Marathon Corp.*, 106 S.W.3d at 728. Conclusions based on such stacking do not constitute evidence. *Id.* If stacked inferences do not constitute evidence, stacked assumptions cannot constitute evidence.

The majority, in support of its holding, asserts that the autopsy report that was prepared following the death of the child's infant brother allowed a reasonable fact finder to conclude that the infant brother "died as a result of cruel abuse on multiple occasions, beginning at least one week prior to his death." Here, however, DFPS offered no expert evidence to explain how the child's infant brother would have, or even could have, demonstrated that it was suffering from such injuries. Indeed, there is no evidence in the record that demonstrates anything more than that the father, over one week, physically abused and killed the child's infant brother, a crime for which the father was punished by the State and in which N.W. was never implicated. There is no direct or circumstantial evidence that anyone else was involved in the crime, was a witness to the crime, was in any way aware of the crime, or should have been aware of the crime.

8

But, even if the trial court, or this Court, might be inclined to guess or suppose, based upon information disclosed in the autopsy report, that the child's infant brother might have shown signs of physical abuse prior to his death, and even if the trial court, or this Court, might wonder if N.W.'s marijuana use affected her ability to perceive such abuse, the evidentiary gap in DPFS's case to terminate the mother's parental rights to her remaining child based upon this factual theory is obvious.

The bottom line is that DFPS's petition to terminate the mother's parental rights, and the majority opinion, are based primarily upon the suspicion that N.W. should have been aware of the abuse that the child's infant brother suffered at the hands of the father one week prior to his death. Yet, there is simply no competent evidence, presented by either an expert or fact witness with personal knowledge, that the child's infant brother would have exhibited signs of abuse. There is also no evidence that N.W., but for any asserted narcotics-related impairment, would have noticed physical injuries to the child's infant brother prior to his death. The only evidence presented by DFPS related to this theory was the testimony from the paternal grandmother, who speculated that "somebody should have seen something was going on," and the caseworker who similarly testified that she was concerned how the mother "could not know" that the child was being abused. The testimony from these two witnesses, along with the autopsy report, could not have allowed a

reasonable fact finder to form a firm belief or conviction to terminate N.W.'s parental rights under section 161.001(1)(E).

The evidence presented by DFPS in this case contrasts with the evidence considered by the Texas Supreme Court in *In re J.P.B.*, 180 S.W.3d 570 (Tex. 2005). In *In re J.P.B.*, the supreme court affirmed a termination decree based upon evidence and expert testimony that a child's multiple injuries "were likely caused by excessive force such as abrupt yanking, pulling, or punching, and were probably not the result of" alternative causes such as the child's medical care; "a parent should have known that something was wrong with a child with such injuries"; and both "parents should have noticed high-pitched screams" from the child as a result of his physical injuries. *Id*. at 574. DFPS presented no such evidence in this case.

The majority even agrees that, "if available," the type of "explanatory expert opinion testimony" that was presented in *In re J.P.B.* would "ideally" have been presented by DFPS in this case prior to terminating the mother's parental rights. But, by acknowledging that such evidence is "ideal[]" in circumstances like those presented here and nevertheless affirming the trial court's termination decree, the majority disregards the "clear and convincing" burden of proof that is imposed in parental-rights termination cases. Perhaps DFPS did not present such expert evidence because an expert could not truthfully so testify in this case. DFPS has never asserted that such evidence would not have been "available" to it. And, even

assuming that DFPS's factual theory is true, there is no legal obstacle that would have prevented DFPS from obtaining and presenting such explanatory testimony to the fact finder.

In sum, I would hold that the evidence is legally insufficient to support termination of N.W.'s parental rights to her remaining child under section 161.001(1)(E).


                                        Terry Jennings
                                        Justice


Panel consists of Justices Jennings, Massengale, and Huddle.

Justice Jennings, dissenting.