Opinion filed July 18, 2019



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00003-CV

_____

## LAURA MARINA MANZANO-HERNANDEZ, INDIVIDUALLY AND AS NEXT FRIEND OF I.A.C., A MINOR, AND MARIA GUADALUPE PAYEN, INDIVIDUALLY AND AS NEXT FRIEND OF J.P., A MINOR, Appellants

## V.

## JONES BROTHERS DIRT AND PAVING CONTRACTORS, INC., Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-140,349**

### M E M O R A N D U M   O P I N I O N

Appellants, the surviving spouses and children of Reyes Payen and Sergio Carrillo, sued Appellee, Jones Brothers Dirt and Paving Contractors, Inc., for gross negligence. Payen and Carrillo died while working for Jones Brothers. Jones

Brothers answered and moved for summary judgment on traditional and no-evidence grounds. Jones Brothers argued, among other things, that Appellants presented no evidence that Jones Brothers was aware of an extreme degree of risk but nonetheless proceeded with conscious indifference. The trial court granted summary judgment for Jones Brothers. In four issues, Appellants appeal the trial court's order granting Jones Brothers' traditional and no-evidence motion for summary judgment. Because we conclude that Appellants produced no evidence of Jones Brothers' gross negligence, we affirm.

*Summary Judgment Evidence*

Jones Brothers provides pavement construction services for both public and private clients, including the Texas Department of Transportation (TxDOT). In 2015, Jones Brothers contracted with TxDOT to repair an eighteen-mile stretch of a two-lane highway, starting from Kermit, Texas, and heading east toward the Ector/Winkler County line—the project was known as the "Kermit Job." The contract between Jones Brothers and TxDOT also included a Traffic Control Plan (TCP). The purpose of the TCP was to ensure the safety of the workers and the general public during road construction. In relevant part, the TCP addressed when the speed limit should be reduced during work activity. Specifically, it stated: "[w]hen workers or equipment are not behind concrete barrier, [and] when work activity is within 10 feet of the traveled way or actually in the [traveled] way," short-term work-zone speed limits "may be included on the design of the traffic control plans."

Cathy Rodriguez was the safety officer at Jones Brothers. Rodriguez was tasked with holding safety meetings, handling safety programs, and enforcing OSHA-related safety requirements. Additionally, Rodriguez was in charge of providing safe working conditions for Jones Brothers' employees and the traveling

2

public.  Jones Brothers also employed several supervisory personnel for its projects. These individuals included Salvador Armenta (a general manager of the Kermit Job) and Silberio Martinez (a job superintendent).  The evidence shows that Rodriguez did not review the TCP prior to the accident in this case.  Furthermore, the evidence shows that Armenta did not review the applicable provision of the TCP and had no familiarity with it.

Payen and Carrillo were also employees of Jones Brothers; they were both members of "the blade crew."  Their job responsibilities included "shoulder[ing] up" and "clean up."  The shouldering-up work consisted of "evening out the edges" after the asphalt and concrete were laid, and the cleanup work included picking up large pieces of broken asphalt that resulted from the shouldering-up work.

By October 21, 2015, the Kermit Job was nearly complete—the highway had been paved and the blade crew was working on the west end of the eighteen-mile stretch of highway (the Kermit side).  The day before, Armenta had called Martinez and asked Martinez to go help on the Kermit Job the following morning. Specifically, Armenta told Martinez to "go down and . . . keep an eye on the guys and make sure [that] before [they] left to pick up that material by the [Ector County] sign"; the Ector County sign was located on the east end of the eighteen-mile stretch of highway (the Ector/Winkler side).  Martinez had been working at a different job site, and October 21 was the first time he had gone to work on the Kermit Job.

When Martinez arrived at the job site on the morning of October 21, the blade crew was working on the Kermit side.  After they finished, Martinez instructed Payen to take his crew, which included Carrillo and Raul Ochoa, to the Ector/Winkler side and cleanup the area around the Ector County sign.  Neither Rodriguez nor Armenta were present on-scene during this time.  After Martinez gave the crew these orders, the crew loaded up a trailer, which was attached to their truck,

and headed toward the Ector/Winkler side. Martinez stayed behind on the Kermit side.

When the crew arrived on the Ector/Winkler side, they were cleaning up the area around the Ector County sign, which was located away from the road and off the shoulder, in the south "bar ditch" of the two-lane highway (i.e. south of the eastbound lane). It is undisputed that the speed limit had not been reduced, and there were no barricades to protect Payen, Carrillo, and Ochoa during the cleanup work. The speed limit at the location was seventy-five miles per hour.

Shortly after the crew started the cleanup work, the driver of an 18-wheeler, who was traveling in the westbound lane of the two-lane highway, lost control of his truck, crossed the yellow center line and the eastbound lane, entered the shoulder of the roadway, and fatally struck Payen and Carrillo; Ochoa survived without any injuries. The parties dispute whether Payen, Carrillo, and Ochoa were working within ten feet of the traveled way.[1]

*Procedural History*

After the accident, Appellants sued: (1) Jones Brothers, (2) the driver of the 18-wheeler, and (3) the driver's employer. Appellants settled with the truck driver and his employer, but pursued their gross-negligence claim against Jones Brothers. Appellants claim that Jones Brothers "was grossly negligent in sending out [Payen and Carrillo] to work alongside a busy highway without any safety protections and

---

[1]Fred Herrera, TxDOT's area engineer for the Kermit Job, testified that, at the location of the accident, the shoulder was nine feet wide. Additionally, Herrera stated that road signs are typically located seven feet from the shoulder. Thus, according to Herrera, "work taking place next to signs could be anywhere between 11 and 16 feet from the traveling way." When Armenta was asked whether he knew how far "from the roadway, from the shoulder" the Ector County sign was, he responded: "10, 12-foot away." However, Appellants argue that, because photographs taken of the crash site show that the point of impact was on the shoulder, the evidence shows that Payen and Carrillo were working within ten feet of the traveled way.

4

without adhering to the applicable portion of the TCP . . . for Short Term Work Speed Limits."

Jones Brothers filed a traditional and no-evidence motion for summary judgment. In the motion, Jones Brothers argued that (1) there was no evidence of Jones Brothers' gross negligence, (2) the truck driver's acts or omissions were the sole proximate cause of the accident, and (3) Jones Brothers was entitled to summary judgment on its affirmative defense of statutory immunity under Section 97.002 of the Texas Civil Practice and Remedies Code. Regarding the gross-negligence claim, Jones Brothers argued that there was no evidence that Jones Brothers had actual, subjective awareness of an extreme risk, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Payen or Carrillo.

In response to Jones Brothers' motion for summary judgment, Appellants argued that the summary judgment evidence raised a genuine issue of material fact regarding whether Jones Brothers was grossly negligent and whether its gross negligence proximately caused the accident. To defeat Jones Brothers' motion, Appellants offered deposition testimony of Rodriguez, Armenta, Martinez, Fred Herrera (TxDOT's area engineer for the Kermit Job), and David Steitle (Appellants' traffic-control expert). In addition to this evidence, Appellants produced the following: (1) Jones Brothers' safety officer designation letter; (2) the relevant provision of the TCP, entitled "Short Term Work Zone Speed Limits"; (3) the Kermit Job's project layout; (4) Steitle's resume; and (5) photographs taken by the medical examiner's office showing the point of impact.

The trial court took Jones Brothers' motion for summary judgment under advisement. Afterwards, the trial court issued an order granting the motion, but did not specify the grounds for its decision. Because the order effectively disposed of all the parties and issues, it constituted a final judgment. This appeal followed.

5

*Issues Presented*

Appellants present four issues on appeal. Appellants' first issue is global in nature and asks whether the trial court erred when it granted summary judgment. In Appellants' second issue, they contend that they produced sufficient evidence to preclude summary judgment on no-evidence grounds. In Appellants' third issue, they assert that Jones Brothers failed to prove its affirmative defense of statutory immunity as a matter of law. Finally, in Appellants' fourth issue, they argue that Jones Brothers' gross negligence was a proximate cause of Payen's and Carrillo's death.

*Analysis*

We first address Appellants' first and second issues regarding whether the trial court erred when it granted Jones Brothers' no-evidence motion for summary judgment on Appellants' gross-negligence claim. We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Because the trial court did not specify the basis of its ruling, we must affirm the trial court's judgment if any of the grounds on which judgment is sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013). When a party moves for summary judgment on both no-evidence and traditional grounds, the appellate court should ordinarily address the no-evidence grounds first. *Burleson v. Lawson*, 487 S.W.3d 312, 317 (Tex. App.—Eastland 2016, no pet.) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman*, 407 S.W.3d at 248. Under this standard, to defeat summary judgment, the nonmovant has the burden to produce summary judgment evidence that raises a genuine issue of material fact as to each challenged

element of its cause of action. *Id.* We view the evidence "in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not." *Id.* A no-evidence challenge will be sustained when:

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Id.* (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

"Gross negligence has both an objective and a subjective component." *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012). First, when "viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Second, "the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* Under the objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). To establish the subjective component, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005). "Some evidence of simple negligence is not evidence of gross negligence. Conversely, some evidence of care does not defeat a gross-negligence finding." *Harrison*, 70 S.W.3d at 785 (citations omitted). Further, "a party cannot be liable for gross negligence when it actually and subjectively believes that

circumstances pose no risk to the injured party, even if they are wrong." *U–Haul Int'l Inc. v. Waldrip*, 380 S.W.3d 118, 141 (Tex. 2012).

A corporation may be liable for gross negligence only if the corporation itself commits gross negligence. *See Ellender*, 968 S.W.2d at 921–22; *see also Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 406 (Tex. 1934), *disapproved on other grounds by Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712 (Tex. 1987). Because a corporation can "act only through agents of some character," *Fort Worth Elevators*, 70 S.W.2d at 402, the Texas Supreme Court has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997).

A corporation is liable for gross negligence if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent. *See Ellender*, 968 S.W.2d at 921. A corporation is also liable if it commits gross negligence through the actions or inactions of a vice principal. *See Hammerly Oaks*, 958 S.W.2d at 389. "Vice principal" encompasses the following: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom the master has confided the management of the whole or a department or a division of the business. *See id.* at 391.

In determining whether acts are directly attributable to the corporation, the reviewing court does not simply judge individual elements or facts. *Ellender*, 968 S.W.2d at 922. Instead, the court should review all the surrounding facts and circumstances to determine whether the corporation itself is grossly negligent. *See McPhearson v. Sullivan*, 463 S.W.2d 174, 176 (Tex. 1971). Whether the corporation's acts can be attributed to the corporation itself, and thereby constitute

8

corporate gross negligence, is determined by reasonable inferences the factfinder can draw from what the corporation did or failed to do and the facts existing at relevant times that contributed to a plaintiff's alleged injury. *See Bowman v. Puckett*, 188 S.W.2d 571, 574 (Tex. 1945).

Here, Appellants argued that the summary judgment evidence raised a genuine issue of material fact regarding whether Jones Brothers was grossly negligent by sending out its workers "without any safety protections" and "without adhering to the applicable portion of the TCP." With respect to the TCP, Appellants claim that it *required* Jones Brothers to reduce the speed limit when its employees were working "within ten feet of the traveling way and [were] not protected behind concrete barriers." We note, however, that the relevant provision of the TCP at issue is discretionary and imposed no such requirement on Jones Brothers. Therefore, we cannot conclude that Jones Brothers was grossly negligent when it failed to follow a discretionary provision. However, we will assume for purposes of our analysis that the TCP was mandatory and that Appellants have satisfied the objective element of gross negligence. Nonetheless, we conclude that the trial court properly granted summary judgment because Appellants produced no evidence that Jones Brothers was subjectively aware of the peril involved and, despite this knowledge, decided to proceed with conscious indifference to the rights, safety, or welfare of Payen or Carrillo.

As mentioned above, to support their assertion that Jones Brothers was grossly negligent, Appellants produced various pieces of summary judgment evidence. The primary evidence that Appellants rely upon to raise a genuine issue of material fact consists of deposition transcripts of Rodriguez, Armenta, Martinez, Herrera, and Steitle.

Rodriguez testified that she had been the safety officer at Jones Brothers for approximately three years before the accident. She explained that her only training specific to roadside-construction safety consisted of a three-day class offered by the "Texas A&M engineering department." Rodriguez further stated that "[a]ll [of Jones Brothers'] work requires an extreme risk" and that it was her responsibility to ensure compliance with all the safety standards related to the Kermit Job. Despite having this understanding, however, Rodriguez's testimony showed that she did not review the TCP and did not administer, attend, or request any safety meetings regarding the TCP. Her testimony also showed that she did not hold any other preconstruction safety meetings pertaining to the Kermit Job generally and that she lacked familiarity with the day-to-day operations of the project.

Armenta testified that, although he took a class on the Texas Manual on Uniform Traffic Control Devices for Streets and Highways, no one at Jones Brothers informed him about the applicable TCP for the Kermit Job. Armenta stated that he did not attend any meetings regarding the TCP or the preconstruction safety meeting for the Kermit Job. According to Armenta, he did not know that a TCP for the Kermit Job even existed. Rather than follow the specific TCP to do the job, Armenta explained that he relied upon his general experience. Armenta further testified that Jones Brothers did not use any kind of protection, such as barricades, cones, or signage, for cleanup work.

Martinez testified that, when Armenta asked for his help on the Kermit Job, Martinez did not have any discussion with Armenta about what signage the workers needed if they were going to be working near the highway. Nor did Martinez have any such discussions with the blade crew when Martinez arrived on the Kermit side the next morning. Additionally, Martinez explained that he lacked any training

about what signs were necessary when workers were working a certain distance from the pavement.

Herrera testified that, if workers were "pick[ing] up debris from the shoulder," that activity "would be considered work activity within 10 feet of the traveled roadway." According to Herrera, if that was the case, he would have recommended that Jones Brothers reduce the speed limit and potentially "blockade" the shoulder where the workers were working. Herrera explained that these safety devices were intended to protect the workers as well as the traveling public.

Lastly, Steitle testified at length about what safety devices Jones Brothers should have employed. The safety devices included a barricade; a "Road work ahead" sign with flags attached to the top of the sign; channelizing devices, such as cones or drums; and a truck-mounted attenuator. Because Jones Brothers failed to employ such devices, Steitle concluded that Jones Brothers was grossly negligent and that its gross negligence proximately caused the accident.

Based on this summary judgment evidence, Appellants contend that a genuine issue of material fact exists regarding whether Jones Brothers was grossly negligent. We disagree.

First, even if we assume that Rodriguez was a vice principal of Jones Brothers, there is no evidence that Rodriguez had an actual, subjective awareness of the risk involved in this case. Although Rodriguez testified generally that "[a]ll [of] our work requires an extreme risk," there is no evidence that Rodriguez had actual, subjective awareness of the particular risk involved. *See Suarez v. City of Texas City*, 465 S.W.3d 623, 637 (Tex. 2015) (discussing that gross negligence requires knowledge of the particular risk alleged). Specifically, there is no evidence that Rodriguez knew that Armenta or Martinez had instructed Payen and Carrillo to go clean up the area around the Ector County sign and that they were out there without

11

any safety equipment. Importantly, Rodriguez testified that she was not aware that, on the day of the accident, Payen and Carrillo "had been sent to work out on the side of the highway at the Ector County sign." Moreover, there is no evidence that TxDOT informed Rodriquez of any compliance concerns. Consequently, there is no evidence that Rodriguez proceeded with conscious indifference to the rights, safety, or welfare of Payen or Carrillo.

Additionally, although Armenta was a "general manager" and Martinez was a "job superintendent," Appellants presented no evidence that either Armenta or Martinez was a vice principal of Jones Brothers. *See Waldrip*, 380 S.W.3d at 138 ("An employee's title alone is not dispositive of whether he is a vice principal."). However, even if we assume they were vice principals, we conclude that Appellants likewise failed to offer any evidence showing that either Armenta or Martinez had an actual, subjective awareness of the risk involved but, nevertheless, chose to proceed with conscious indifference to the rights, safety, or welfare of Payen or Carrillo. *See Tarrant Cty. v. Bonner*, No. 18-0431, 2019 WL 2256509 (Tex. May 24, 2019) (discussing that conscious indifference in the context of a tort consists of an act or omission involving an extreme risk to others, an actual awareness of that risk, and knowledge that harm was a highly probable consequence of the act or omission).

Specifically, regarding Armenta, Appellants produced no evidence that Armenta had an actual awareness of the risk of sending Payen and Carrillo to go clean up the area around the Ector County sign without proper safety protections. Like Rodriguez, Armenta was not present on the jobsite on the day of the accident. As a result, there is no evidence that Armenta knew what safety protections Payen and Carrillo used or lacked. Although Armenta testified that Jones Brothers does not provide any kind of protection for its workers during the cleanup process, there is no evidence that Armenta knew that harm was a highly probable consequence of

12

this act or omission. That is, there is no evidence that Armenta had knowledge of any prior accidents resulting from this conduct, no evidence that any of Jones Brothers' employees complained of this practice, and no evidence that TxDOT raised any compliance concerns regarding the practice. Additionally, there is no evidence that Armenta was aware of the TCP and chose to disregard it. Further, Appellants failed to show evidence that Armenta knew that Payen and Carrillo would be working within ten feet of the highway or at an unsafe distance from the highway. As such, Appellants failed to produce some evidence that Armenta acted with conscious indifference.

Similarly, Appellants produced no evidence that Martinez had an actual awareness of the risk of instructing Payen and Carrillo to pick up broken asphalt near the Ector County sign without proper safety protections. As with Armenta, there is no evidence that Martinez knew about the TCP. Nor is there any evidence that Martinez knew how close to the highway Payen and Carrillo would be working or whether they lacked or needed certain safety equipment. Martinez testified that he simply asked Payen to take his crew and clean up the area around the Ector County sign without any further discussion. In response to Martinez's instruction, the crew loaded up their trailer, and headed toward the Ector/Winkler side without complaint. Thus, Martinez's actions show that he was not subjectively aware of any risk at the time he sent the workers to clean up on the Ector/Winkler side and that he did not act with conscious indifference to their rights, safety, or welfare.

Further, Herrera's and Steitle's testimony did not address whether Jones Brothers was subjectively aware of an extreme risk or acted with conscious indifference to the rights, safety, or welfare of others. Specifically, neither Herrera's testimony about what he would have recommended if Jones Brothers' employees were working on the shoulder, nor Steitle's testimony about what safety measures

Jones Brothers should have employed, sheds any light on the mental state of a vice principal or employee at Jones Brothers.

Likewise, the other evidence that Appellants produced, including the safety officer designation letter, the relevant provision of the TCP, the project layout, Steitle's resume, and the photographs showing the point of impact, fail to show whether Jones Brothers was grossly negligent. Specifically, in regard to the photographs, although they depict the point of impact, they do not show where the workers were actually working before the impact. More importantly, even if the photographs did constitute some evidence that Payen and Carrillo were working within ten feet of the traveled way, there is no evidence that Rodriguez, Armenta, or Martinez knew that Payen and Carrillo would be working at an unsafe distance from the traveled way that warranted certain safety precautions.

Appellants also argue that Jones Brothers was grossly negligent because it hired and failed to train a competent safety officer and because it failed to train its supervisory staff regarding applicable safety standards. However, Appellants offered no evidence that Jones Brothers was aware, yet consciously indifferent to, the extreme danger caused by hiring Rodriguez as the safety officer. Moreover, although Martinez testified that he did not have training regarding when certain signs should be posted, Appellants produced no evidence that Rodriguez or Armenta knew that Martinez lacked proper training. Nor is there any evidence that Jones Brothers knew that Rodriguez or Armenta lacked training on the applicable safety standards. While Appellants' summary judgment evidence may well have raised a fact issue as to Jones Brothers' *ordinary* negligence, Appellants failed to produce some evidence of Jones Brothers' *gross* negligence.

When we view the evidence in the light most favorable to Appellants, there is no evidence that Jones Brothers had an actual, subjective awareness of an extreme

14

risk but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Payen or Carrillo. Because Appellants' evidence does not raise a genuine issue of material fact concerning the mental state required to prove gross negligence, the trial court did not err when it granted Jones Brothers' no-evidence motion for summary judgment. We overrule Appellants' first and second issues.

In light of our disposition of Appellants' first and second issues, we need not address Appellants' third and fourth issues. *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We affirm the judgment of the trial court.

KEITH STRETCHER

JUSTICE

July 18, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.